476 So.2d 1228 (1985)
Danny Ray MILES, alias
v.
STATE.
6 Div. 222.
Court of Criminal Appeals of Alabama.
February 12, 1985.
Rehearing Denied April 23, 1985.
Certiorari Denied November 1, 1985.
*1229 James G. Stevens, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Joseph G.L. Marston, III, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-799.
TAYLOR, Judge.
Danny Ray Miles was indicted by the grand jury of Jefferson County in December 1975, for the murder of Mr. Ronald *1230 Harvel White. On March 25, 1976, Miles was convicted of murder in the first degree and was sentenced to a term of life imprisonment. Appeal was taken to this court but no brief was filed on behalf of appellant. By implementing the search the record rule, this court in Miles v. State, 343 So.2d 801 (Ala.Cr.App.1977), determined that the judgment of conviction was due to be affirmed. Thereafter in Ex parte Miles, 343 So.2d 806 (Ala.1977), the Alabama Supreme Court denied certiorari.
After exhaustion of his state remedies, the appellant filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Alabama. One of his contentions was that because his attorney had not filed a brief when his appeal was originally submitted to this court, he was denied due process. In Mylar v. Britton, No. CV-79-A-1420-S (N.D.Ala.1980) (unpublished opinion), that court held that by the means of the "search the record rule" the appellant had received adequate appellate review. Appeal was taken to the United States Court of Appeals for the Eleventh Circuit. In Mylar v. Alabama, 671 F.2d 1299 (11th Cir.1982), it was held that "failure to file a brief in a nonfrivolous appeal falls below the standard of competency expected and required of counsel in criminal cases and therefore constitutes ineffective assistance." The court thereupon remanded the case to the district court with instructions to grant the petition for habeas corpus unless the State of Alabama within a reasonable time should grant Miles either an out-of-time appeal or a new trial. The State applied for a rehearing en banc, which was denied April 29, 1982, 677 F.2d 117 (11th Cir.). The state, thereupon, on June 5, 1982, petitioned the United States Supreme Court for a writ of certiorari to review the Eleventh Circuit's decision. The U.S. Supreme Court denied the writ without comment on July 6, 1983. Alabama v. Mylar, 463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983).
On August 16, 1983, this court, on motion of the State, granted the appellant an out-of-time appeal and appointed a new attorney to represent him. Hence, this appeal is now before us.
A careful review of the record reveals that the facts as related in Miles v. State, 343 So.2d 801 (Ala.Cr.App.1977) were completely correct and a restatement of those facts as contained therein follows.
The case
"involves a double murder, robbery, kidnapping and rape. The victims were Mrs. Clarice Knabe and Ronald Harvel White. Appellant was indicted for killing White with a .38 caliber pistol and one Samuel `Bud' Yarber was indicted and convicted in the shooting death of Mrs. Knabe and he, too, was sentenced to life imprisonment. This is a classical case of two murder suspects, each trying to put the blame on the other and thus exculpate himself from a murder conviction. Their efforts backfired and justice still reigns supreme.
"This tragic episode began on the late afternoon of November 3, 1975, when appellant went to the apartment of Yarber around 6:30 p.m. About 45 minutes later they left in Yarber's car to go out drinking. They went to several bars and drank beer at each. Appellant asked Yarber to accompany him to K-Mart's Sporting Goods Department in order to purchase some ammunition for Yarber's.38 caliber pistol which appellant had previously asked to borrow. They went to K-Mart, where appellant purchased a box of ammunition around 9:00 p.m. that night. This purchase was recorded in a book which the manager of the Sporting Goods Department testified he was required by law to keep.
"The two men then returned to Yarber's apartment where Yarber gave appellant his pistol. As appellant was loading the pistol the pistol discharged and the bullet lodged in the wall or ceiling of the living room. Yarber became provoked at appellant for discharging the pistol in his apartment for fear he would be evicted. Appellant apologized to Yarber and carried the pistol out of the apartment and put it in his car.

*1231 "A short while later the two men left in appellant's car and went to the 2010 Lounge in downtown Birmingham, arriving there around 9:30 p.m. They parked in the rear parking lot and entered the lounge through the back door. There were a number of customers in the place at the time. They were all drinking and watching a football game on television. The football game was over just before 11:00 p.m. and everyone left except the bartender, Mrs. Clarice Knabe, Mr. Ronald Harvel White, appellant and Mr. Yarber. At this time, according to the testimony of Mr. Yarber given at a preliminary hearing, appellant pulled out the pistol he had borrowed from Yarber and ordered Mrs. Knabe and Mr. White to put their hands up and said, `This is a stick-up.' Appellant ordered Yarber to lock the front door and then demanded all the money from Mrs. Knabe and Mr. White. Mrs. Knabe protested that the owner of the lounge did not leave any money in the place. Appellant walked behind the bar to check for himself. Appellant ordered White to empty his pockets on the counter and White put his wallet on the bar. At this time there was a knock on the front door and appellant ordered Mrs. Knabe and Mr. White out the back door and into the back seat of his car. Appellant ordered Yarber to drive the car. Yarber asked appellant where they were going and appellant told him to drive to the place where they had zeroed Yarber's deer rifle a few weeks previously. Yarber began traveling south on 1-65 toward Hoover, Alabama, and turned south on Highway 31. They traveled south on Highway 31 to Highway 150 going toward Bessemer. During the entire trip from the 2010 Lounge appellant kept asking Mrs. Knabe what she was going to tell the owner of the lounge and she said, `We're going to tell him that two colored men came in and robbed us.' Appellant asked White what he was going to say and White told him he was going to say the same thing that Mrs. Knabe was going to say.
"Appellant pointed the pistol at Mrs. Knabe and White in the back seat and told them to take off all their clothes. After they had completely disrobed appellant told Mrs. Knabe to get in the front seat between him and Yarber and she did. When they arrived at the appointed place appellant ordered Mrs. Knabe out of the car and told White to keep his hands up inside the car. Appellant then proceeded to have sexual intercourse with Mrs. Knabe on the trunk of the car while Yarber and White remained inside the car. He then ordered White out of the car and told Mrs. Knabe to lie on her back on the ground. Appellant ordered White to get on top of Mrs. Knabe. While they were in that position, according to sworn testimony given by Yarber at the preliminary hearing, appellant shot and killed both Mrs. Knabe and Mr. White. Appellant then reloaded the pistol, and he emptied it again into the bodies of the two victims. Yarber saw appellant standing over the two victims with the pistol in his hand and said he did not know how many shots were fired but thought there were ten to fifteen. Appellant then got back in the car and told Yarber to return to Highway 31, and to find some deep water so that he could dispose of the gun.
"As they drove along appellant directed Yarber to throw the clothes of the victims out of the car at different places and intervals along the highway. He then had Yarber drive to Lake Purdy off Highway 119 where appellant got out of the car and threw the pistol as far into the lake as he could throw it, and threw two unspent cartridges several feet out into the lake.
"While in the car on the way back to town appellant pressed Yarber to take some of the money that he had obtained in the robbery of Mrs. Knabe and Mr. White. Yarber told appellant that he did not want the money but he got around fifty dollars anyway, and appellant coached Yarber as to their alibi on this fateful night.

*1232 "Yarber was called as a State witness during appellant's murder trial but he refused to answer a single question posed to him by the trial court or the district attorney. Yarber would not even state his name. The trial court ruled that it would serve no useful purpose to hold him in contempt of court and sentence him to jail. The trial court, over appellant's objection, admitted into evidence Yarber's testimony given at appellant's preliminary hearing at which time Yarber was subjected to an extensive, vigorous, withering, thorough and searching cross-examination by appellant's lawyers.
"It is noteworthy that appellant testified at his own trial and his testimony as to all the details, places, and circumstances leading up to and culminating in the robbery, kidnapping and killing of Mrs. Knabe and Mr. White, in the main, pigtracked the testimony of Yarber with one exception: Appellant claimed that Yarber was the leading actor in the entire drama and it was Yarber who did all the things that Yarber accused appellant of doing."

I
Appellant first contends that the admission of testimony given by Samuel Yarber at a preliminary hearing violated his right to confront the witnesses against him, thus violating the Sixth and Fourteenth Amendments to the United States Constitution and Article One, Section Six, of the Alabama Constitution of 1901.
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Court noted that "this court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause. Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895)." The Court went on to hold that the preliminary hearing in Green was not significantly different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause. In Green at the preliminary hearing, the declarant was under oath, the defendant was represented by counsel and had every opportunity to cross-examine the declarant as to his statement, and the proceedings were conducted before a judicial tribunal equipped to provide a judicial record of the hearings. The preliminary hearing in Green was not unlike that in the instant case. In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court again found that the preliminary hearing testimony of a witness, who was unavailable at trial, was properly admitted at trial because the witness had been subjected to cross-examination. The court noted that the cross-examination served to challenge whether the declarant was sincerely telling the truth, whether he accurately perceived and remembered the matter he related and whether his intended meaning was adequately conveyed by the language he employed. The Court in these cases clearly equated confrontations with adequate cross-examination.
Alabama courts, as well, have long held that the admissibility of testimony given by a witness at a former trial or proceeding who is now unavailable is contingent upon whether the issues were substantially the same, Hardy v. State, 53 Ala.App. 75, 297 So.2d 399 (1974); Wellden v. Roberts, 37 Ala.App. 1, 67 So.2d 69 (1951), cert. denied, 259 Ala. 517, 67 So.2d 75 (1953), and whether the party against whom it is offered was afforded the opportunity to cross-examine the witness. Green v. State, 263 Ala. 324, 82 So.2d 418 (1955); Wellden, supra, Harwell v. State, 12 Ala.App. 265, 68 So. 500 (1915). In Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837 (1950), it was held that such former testimony is admissible where the witness becomes unavailable by reason of the claim of privilege at the second trial.
In the instant case, both the examination and the cross-examination of the witness were read into the record when he claimed the privilege against self-incrimination. All the necessary elements for the admissibility of the testimony were present.
We see no basis for the appellant's argument that the precedent as established by this court and that of the United States *1233 Supreme Court is incorrect. Consequently, we hold that the admission of Yarber's testimony from the preliminary hearing did not violate appellant's constitutional rights as set out in the Sixth and Fourteenth Amendments of the United States Constitution or Article One, Section Six, of the Alabama Constitution of 1901. See, Trahan v. State, 450 So.2d 1102 (Ala.Cr.App. 1984), and authorities cited therein.

II
The appellant next contends that Yarber's unavailability was the fault of the state and that this violated the unavailability exception to the hearsay rule.
It is well settled that the unavailability of a witness must not be a result of the fault of the state. California v. Green, 399 U.S. 149 at 167, 90 S.Ct. 1930 at 1939; Bridges v. State, 26 Ala.App. 1, 152 So. 51 (1933). Appellant's primary contention as to why the state was at fault for the witness's unavailability appears to be that the witness's testimony might have been procured if he had been granted immunity. In Gipson v. State, 375 So.2d 504 (Ala.Cr.App.1978), this court noted that
"district attorneys are utterly without authority and power to grant an accused immunity from arrest and prosecution for violating our criminal laws. To clothe them with such power and authority would strike at the very heart of our system of criminal justice and oust the courts of the powers vested in them by the Constitution and statutes."
The court went on to say that
"this is not to be taken to mean that prosecuting attorneys and judges are forbidden to grant an accused immunity from prosecution for criminal offenses in exchange for truthful testimony as a state witness against ... a co-indictee."
We can ascertain no reason, however, why the witness in the instant case should have been granted immunity in order to compel him to testify on the same subject which he had fully testified to at the preliminary hearing. This is especially true because that former testimony met all the requisites of admissibility in the present proceedings as discussed herein.
Therefore, we find that the unavailability of the witness was due to no fault on the part of the state.

III
The appellant next contends that the state failed to lay the proper predicate for the introduction of the preliminary hearing testimony of Mr. Yarber.
We have thoroughly discussed this subject, and found that the witness was unavailable and that all the requisites to make the introduction of his earlier testimony proper in the present proceeding were met. Trahan, supra. A further discussion would only be redundant.

IV
The appellant next contends that the state has failed to show absence of fault on its part or, in the alternative, due diligence in the procurement of Mr. Yarber to testify.
As we have already determined, the unavailability of the witness was due to no fault on the part of the state. As to the state's diligence in the procurement of Mr. Yarber, it appears that the state's attorneys did everything within their power to secure his testimony. The state called Mr. Yarber to the stand, where he claimed the privilege against self-incrimination by refusing to testify. This was sufficient to establish his unavailability. C. Gamble, McElroy's Alabama Evidence, § 245.07(10) (3d ed. 1977); Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837, cert. denied, 254 Ala. 74, 46 So.2d 847 (1950). There was nothing further the state could do to exhibit diligence in procuring the witness's testimony than that which it in fact did.

V
The appellant contends that he was convicted in violation of Title 15, § 307, Code of Alabama 1940, as recompiled 1955, (now) § 12-21-222, Ala.Code 1975), which *1234 provides that the testimony of accomplices must be corroborated in order to authorize a conviction. The corroboration necessary to support the testimony of the accomplice must be of some fact tending to connect the accused with the crime. It must be substantive and inconsistent with the innocence of the accused. Anderson v. State, 44 Ala.App. 388, 210 So.2d 436 (1968). However, the corroboration need not be sufficiently strong by itself to warrant a conviction. The only requirement is that it tend to connect the accused with the offense. Lambert v. State, 55 Ala.App. 669, 318 So.2d 364 (1975); Peoples v. State, 56 Ala.App. 290, 321 So.2d 257 (1975).
After careful consideration of all the evidence presented outside of the testimony of Yarber, we find that a number of factors that tend to connect the accused with the offense emerge. Mr. Ahlgren, who managed the sporting goods department at K-Mart, testified that the appellant purchased a box of .38 caliber special ammunition on the night in question and that he recorded the name of Danny R. Miles in the disposition book that he was required by law to keep. This ammunition was shown to be of the same caliber and kind as that fired by the gun in Yarber's apartment and in the 2010 Club and that utilized in the murder of the victims.
The victims were last seen in the company of the appellant and his accomplice. Mrs. Alma Vest testified that she was at the 2010 Club on the night in question, that she left the club at around 11:00 p.m. and that the only persons remaining when she left were the victims, the appellant, and Mr. Yarber. Appellant's fingerprints were found on a glass at the bar and the contents were still cold when the police arrived. The state also proved that the appellant gave false, evasive, and inconsistent answers to pertinent inquiries made of him concerning the crime. Among these were that he did not know Mrs. Knabe, when evidence showed otherwise, and that he and Yarber left the lounge at 9:30 p.m. on the night in question, when it was shown that they were there at 11:00 when Mrs. Vest left.
All of these factors, considered together, connect the appellant with the offense and corroborate the testimony of Mr. Yarber.

VI
Finally, the appellant contends that the trial court erred by allowing the introduction into evidence of a so-called "sex list" because it had no bearing on any relevant issue and violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Six, of the Alabama Constitution of 1901.
While we recognize that the grounds for the introduction of such evidence may have been weak, we believe that the grounds were sufficient to warrant its introduction. The list in question was composed of over 120 entries. Most of the entries consisted of a woman's name and a city. Some of the entries consisted of the letter "W" followed by a place or event such as
"# 64 W Took Money Back Yo Ohio,
# 65 W Took Purse Yo Ohio,
# 66 W Front of diner Yo Ohio."
In Stoner v. State, 418 So.2d 171 (Ala.Cr. App.), cert. denied, Ex parte Stoner, 418 So.2d 184 (Ala.1982), cert. denied, Stoner v. Alabama, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983), this court noted that in cases where the evidence is circumstantial a wide range of testimony is admissible to show the motive of the defendant for committing the crime charged. The court also noted that "in a case where the evidence is circumstantial, evidence of motive becomes of great importance" and "when circumstances point to the guilt of an accused, evidence of his motivation, even though weak, is admissible."
This unusual document indicates that the appellant had maintained a log of his sexual activities spanning several states. Some of these occurrences apparently included robbery of the women, events that he for some reason wanted to record. This tended to prove that he had a *1235 predilection to commit offenses against women and established some motivation in the instant case. The circumstances pointed to the guilt of the accused and even though weak this evidence of motivation was admissible.
Therefore, we conclude that the appellant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Six, of the Alabama Constitution of 1901, were not violated by the introduction of the list into evidence.

VII
The appellant contends that the entire trial was a "mockery of justice" and that the trial judge's demeanor was such that the jury could not help but be prejudiced by the trial court's interjection into the trial.
If there are no objections to allegedly prejudicial remarks by the trial court, the remarks are not subject to review unless they are grossly improper. For a particular remark to amount to grossly improper error requiring reversal, it must have influenced the result of the case. Lokos v. State, 434 So.2d 818 (Ala. Cr.App.1982). We have carefully reviewed the record for objections to the trial court's comments and for grossly improper error and have determined that in no instance did any comment by the court have the slightest influence on the result of the case.
The appellant's contention that the entire trial was a "mockery of justice" is completely without merit. No prejudicial error was committed by the trial judge.

VIII
The state now asks us to consider issues not addressed by appellant in his brief.
First, we will consider whether appellant was afforded those rights required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to the taking of his statement.
The record reveals that Detective Sergeant Gillespie read the appellant his rights off a written card. He had that card with him and read it in court. The rights read to the appellant at the time of his statement were sufficient in every respect. After being advised of his rights, the appellant indicated that he understood them and that he did not wish to have an attorney present. When asked if he wished to talk to Detective Gillespie, the appellant replied, "Alright right ... shoot, anything you got on your mind."
We therefore conclude that appellant was fully apprised of his rights and that he voluntarily waived those rights prior to making any statement.
The state also wishes us to address the inferences made by appellant regarding the treatment of Yarber by the police.
In his brief the appellant states that "In forcing Yarber to testify against the Appellant, the State is trampling Yarber's constitutional rights to his personal privilege of self incrimination."
The state contends that the appellant is without standing to argue that the constitutional rights of Mr. Yarber have been violated. After a careful review of the facts involved we must agree with the general rule as stated in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), that "a litigant may only assert his own constitutional rights or immunities." Therefore, we hold that the appellant is without standing to assert the constitutional rights of Mr. Yarber.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.

ON REHEARING
TAYLOR, Judge.
On February 12, 1985, this court issued a ruling on the appeal of Danny Ray Miles affirming this conviction for the murder of Ronald Harvel White.
Appellant now makes a pro se application for rehearing. We have considered each *1236 allegation and issue raised by the appellant in this application and have found that only his claim of ineffectiveness of counsel demands any attention.
We have carefully reviewed the record for evidence of incompetence on the part of appellant's attorney and have found no reason to hold that counsel was ineffective in any way.
We find that all other issues raised by appellant were either addressed on original appeal or were completely without merit. Nothing having been raised by the appellant which warrants a rehearing, his application for rehearing is overruled.
OPINION EXTENDED, APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.