WISE, Judge.
Mark Jeffrey Steele was convicted of sexual abuse in the first degree, a violation of § 13A-6-66(a)(3), Ala.Code 1975. He was sentenced to 20 years’ imprisonment as a habitual felony offender.
The facts adduced at trial reflected that the victim, G.N.Y., who was a minor, went to live with her maternal grandmother, M.S., in the fall of 2001.[1] In November 2001, M.S. and G.N.Y. moved to Cullman, Alabama, where they became neighbors of Steele and his family. G.N.Y. became Mends with Steele’s stepdaughter, A.D. G.N.Y. and A.D. were about 10 years old at the time and stayed overnight at each other’s house on several occasions. (R. 47-51, 58-59, 78, 80, 114, 133, 245.) Steele; his wife, Shelly; his four-year-old daughter; and A.D. lived in the home together.
G.N.Y. testified that when she stayed overnight with A.D. and A.D.’s mother was not home, she would “sometimes” sleep in A.D.’s parents’ bed with A.D., the four-year-old, and Steele. (R. 141-43, 153-54.) When the prosecutor asked G.N.Y. to tell the jury what Steele did to her, G.N.Y. stated, “I don’t really want to talk about it.” (R. 146.) On cross-examination, Steele’s counsel also asked G.N.Y. to give her version of the events, but G.N.Y. again responded, “I really don’t want to talk about it.” (R. 159-60,173-74.)
M.S. testified that, in April 2002, G.N.Y. asked her to take her to her mother’s house, which was within walking distance of M.S.’s house. When M.S. asked G.N.Y. why she could not walk to her mother’s house, G.N.Y. told her grandmother that she was afraid that she would see Steele. G.N.Y. had to walk past Steele’s house to *24 get to her mother’s house. (R. 59-60, 63, 111.) M.S. testified that G.N.Y. told her that
“the last time she spent the night with [A.D.] when Shelly was in the hospital, [Steele] had [A.D., the four-year-old, and G.N.Y.] sleeping in the same bed with him.... And I said what did he do. She said well, he had [A.D.] sleeping against the wall, [the four-year-old] between me and him and he was touching me and put his finger inside of me and put my hand on his private and when I tried to move it, he took my hand and put it back on him.”
(R. 60-61.) M.S. testified that she asked G.N.Y. why she did not call her when Steele touched her, and G.N.Y. told her that Steele would not let her. (R. 61.)
M.S. promptly reported G.N.Y.’s claims of sexual abuse to the Cullman County Department of Human Resources (“DHR”) on April 16, 2002. M.S. was directed to take G.N.Y. to the Child Advocacy Center, a child-friendly facility where physically and sexually abused children are interviewed and counseled. (R. 61-62, 91-93, 180.) On April 17, 2002, G.N.Y. was interviewed at the Center by Lisa McSwain, a forensic interviewer with DHR. (R. 185.) McSwain testified that G.N.Y. told her that Steele had sexually abused her on more than one occasion (R-193-94); McSwain testified:
“[PROSECUTOR]: Was [G.N.Y.] able to give you any details about the abuse?
“[McSWAIN]: Yes, she did.
“[PROSECUTOR]: What did she say?
“[McSWAIN]: She related to me that the abuse would happen when Shelly was not there and that she described an incident where they were in [Steele] and Shelly’s bed and [Steele] had touched her inside her underwear and put his finger in her hole.... And also put her — placed her hand on his penis inside his underwear.”
(R. 194.) McSwain also testified that G.N.Y. identified her body parts on an anatomical drawing, that she wrote the names of the parts down as G.N.Y. identified them, and that G.N.Y. marked the area on the drawing where Steele had touched her. (R. 200-01, 210.) On cross-examination, McSwain acknowledged that G.N.Y. told her that she lied at times; that G.N.Y. stated she lied when her grandmother and mother told her to lie; that G.N.Y. denied sleeping in the Steeles’ bed overnight; that G.N.Y. said she got out of the bed after “this incident” and went to A.D.’s room; that G.N.Y. said that only A.D. was there when the abuse occurred; that Steele made G.N.Y. get on top of him; that the four-year-old was at the foot of the bed “butt naked” when the abuse occurred; that the stories told by G.N.Y. at trial and in her interview are inconsistent “[i]f she is talking about the same time”; and that A.D. told a much different story than G.N.Y. (R. 217-23, 227.)
Shanna Johnson, an investigator with DHR, and Deputy Shane Chambers, an investigator with the Cullman County Sheriffs Department, observed the interview of G.N.Y. on a television monitor at the Child Advocacy Center from an adjoining room. Johnson interviewed the four-year-old and Shelly at the sheriffs department, and Johnson and McSwain interviewed A.D. at her school. (R. 97, 212-13, 235-36.) The four-year-old and A.D. stated that they did not see anything happen between Steele and G.N.Y. A.D. stated that she and G.N.Y. “camped out in the living room,” that G.N.Y. had never slept in A.D.’s parents’ bed, and that the children were forbidden to go into their parents’ bedroom. (R. 101-03, 222-23.) G.N.Y. testified that she never slept in the *25 living room while visiting A.D. (R. 142, 154.)
Deputy Chambers took a statement from Steele. Steele told Chambers that G.N.Y. had spent the night with A.D. at the Steeles’ house on about five occasions and, on the times when Shelly was not there, G.N.Y. would sleep in the bed with him and his daughters. In his statement, Steele denied that G.N.Y. had ever seen his penis and he denied touching G.N.Y. (R. 241-47.)
Steele requests this Court to remand this cause to the trial court and to direct the trial court to address his posttrial motions. In the alternative, Steele sets forth the issues that he claims warrant reversal or remand of this cause.
I.
Steele first contends that the trial court erroneously concluded that it lost jurisdiction to address his posttrial motions. The State agrees with Steele, but contends that Steele’s failure to attach an affidavit in support of his motion for a new trial is fatal to his request that this cause be remanded.
The sentencing hearing in this case took place on June 27, 2003. (R. 373.) On July 15, 2003, Steele filed a notice of appeal and a motion for resentencing. (C. 23, 36.) On July 25, 2003, Steele filed a motion for new trial and motion for judgment of acquittal. (C. 15.) On July 31, 2003, the trial court wrote on the face of the motion for a new trial, “Defendant has appealed, thus this court no longer has jurisdiction to rule on any motion.” (C. 15.) The trial court did not address Steele’s motion for resentencing. The State did not file a response to Steele’s posttrial motions.
The filing of a notice of appeal did not divest the trial court of jurisdiction to address Steele’s timely filed posttrial motions. In Ex parte Walker, 652 So.2d 198, 199 (Ala.1994), the Alabama Supreme Court wrote:
“[I]n a criminal case, a motion for new trial filed within 30 days of conviction or sentence is not waived by a notice of appeal, ‘regardless of the sequence in which the notice of appeal and the motion are filed.’ Melvin v. State, 583 So.2d 1365, 1367 (Ala.Crim.App.), on return to remand, 588 So.2d 939 (Ala.Crim.App.1991); see Ala.Code 1975, § 12-22-133; Rule 4(b)(1), Ala.R.App.P.; and Rule 24, Ala.R.Crim.P. (formerly Temporary Rule 13).”
See also Carthen v. State, 845 So.2d 8, 8-9 (Ala.Crim.App.2002)(trial court erroneously determined that it had lost jurisdiction to rule upon timely filed motion to withdraw guilty plea, where motion was filed after notice of appeal); Melvin v. State, 583 So.2d 1365, 1366-67 (Ala.Crim.App.1991)(the trial court was in error by ruling that it had lost jurisdiction and for failing to address the defendant’s posttrial motion, and the case was remanded “to the trial court with instructions to conduct a hearing on the appellant’s motion to amend sentence and to rule upon same”).
While the trial court erred by determining that it had lost jurisdiction, Steele did not submit an affidavit in support of his motion for a new trial. In limited cases, we have overlooked the defendant’s failure to attach a supporting affidavit where the grounds stated in the motion for a new trial are supported by the record. See Hill v. State, 675 So.2d 484, 486-87 (Ala.Crim.App.1995). After reviewing the record in the present cause, however, we conclude that it is not necessary to remand this case for the trial court to address Steele’s posttrial motions, except as indicated below. We now address the merits of Steele’s substantive issues.
*26 II.
Steele contends that the trial court committed reversible error by admitting into evidence the videotaped interview of G.N.Y. McSwairis videotaped interview of G.N.Y. was played for the jury. (R. 92-95, 186, 201-02, 209.) Steele contends that the videotape was admitted into evidence in violation of the Child Physical and Sexual Abuse Victim Protection Act of 1989, § 15-25-30 et seq., Ala.Code 1975.
A.
In the videotape that was played for the jury, G.N.Y. stated that Steele put his finger in her “hole” and made her touch his penis. Before the videotape was played for the jury, M.S. had testified to those same facts. Steele did not object to M.S.’s testimony. (R. 59-61, 88.) Likewise, before the videotape was played to the jury and admitted into evidence, McSwain testified about the substance of the statements G.N.Y. made during the videotaped interview. (R. 191-201.) While Steele objected to McSwairis testimony at trial on the basis of hearsay (R. 191-92), he does not contend on appeal that McSwain’s testimony was impermissible. We are limited to review of those issues properly and timely preserved at trial and pursued on appeal. See Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App.1990).
The videotaped interview of G.N.Y. played to the jury set forth the same, material information that was introduced to the jury through the testimony of M.S. and McSwain. The admission of evidence that is merely cumulative, even if error, is harmless. Reese v. City of Dothan, 642 So.2d 511, 515 (Ala.Crim.App.1993).
B.
Moreover, Steele is not entitled to prevail on the merits of his claims that the trial court improperly permitted the State to introduce the videotaped interview of G.N.Y. Steele argues that the videotape should not have been admitted: (1) because he was unable to cross-examine G.N.Y. about her statements made in the videotaped statement, in light of her refusal to answer questions at trial, and (2) because the trial court failed to abide by the technicalities of the Child Physical and Sexual Abuse Victim Protection Act, § 15-25-30 et seq., Ala.Code 1975 (“the Act”).
1.
Steele’s argument that he was not permitted to cross-examine G.N.Y. is without merit. While G.N.Y. was evasive at trial when asked about certain comments she had made in the videotaped interview, G.N.Y. was, nevertheless, still available for cross-examination. Section 15-25-32(1) requires that the witness be “subject to cross-examination about the out-of-court statements.” (Emphasis added.) G.N.Y. admitted that she told her grandmother and Lisa McSwain about the sexual abuse, and G.N.Y. stated that what she told McSwain was the truth. (R. 147-48.) On cross-examination, G.N.Y. testified that she slept in the Steeles’ bed “a few times,” and that Steele, A.D., the four-year-old, and she would sleep in' the bed together. (R. 154.) G.N.Y. also testified that she did not remember telling McSwain that she sometimes lied and that she lied when told not to do so by her mother and grandmother. (R. 157-58.) G.N.Y. testified that she remembered playing with dolls when she was interviewed by McSwain, that they pretended that the dolls were her, Steele, and his daughter and stepdaughter, and that at one time she laid the doll that was her on top of the one that was Steele. (R. 158-59.) G.N.Y. also testified that she could not remember how many times Steele touched her and could not remember what she told her grand *27 mother in this regard.[2] (R. 166-67.) G.N.Y.’s refusal to answer the questions posed to her about the sexual abuse did not affect the admissibility of the videotaped statement; rather, G.N.Y.’s evasiveness went to the weight to be given her out-of-court statements, a matter within the province of the jury. See Poole v. State, 650 So.2d 541, 543 (Ala.Crim.App.1994)(“The credibility of the 11-year-old victim was an issue for the jury.”); cf. Ex parte B.B.S., 647 So.2d 709, 713 (Ala.1994)(Section 15-25-32 “would appear to require an opportunity for the party against whom the hearsay statement is offered to ask the child, ‘Did you make such a statement?’ ”). The trial court specifically charged the jury on three separate occasions that it was free to afford the out-of-court statements of G.N.Y. whatever weight, if any, that it deemed appropriate under the circumstances. (R. 131-32, 207-OS, 355-56.) See Part II.B.2, infra. There is no indication that the jury was unable to abide by the instructions of the trial court.
2.
Steele also contends that the videotaped statement should not have been admitted into evidence because no expert testimony was offered to establish that the child was unavailable to testify, § 15-25-33, Ala. Code 1975; the State failed to produce corroborative evidence of the statement, § 15-25-34, Ala.Code 1975; the trial court failed to make a finding that the child victim was unavailable to testify or to “support with findings and record any rulings pertaining to the child’s unavailability and the trustworthiness of the out-of-court statement,” see §§ 15-25-32(2)a. and 15-25-38, Ala.Code 1975; and the videotaped statement was not shown to “possess particularized guarantees of trustworthiness,” § 15-25-32(2)b., Ala.Code 1975.
To begin with, G.N.Y. was not “unavailable to testify,” as that phrase is used in the Act. See § 15-25-32(2). There was no indication before the trial court that the child victim had a “total failure of memory,” § 15-25-32(2)a.3.; that the child was incompetent, § 15-25~32(2)a.5.; or that there was a “[sjubstantial likelihood that the child would suffer severe emotional trauma from testifying,” § 15-25-32a.6.[3] Expert testimony is only required to establish “unavailability.” See § 15-25-33. Likewise, because the child was not unavailable to testify, the State was not required to introduce corroborative evidence. Section 15-25-34 states: “Before a statement may be admitted pursuant to this article on the grounds that the child de-clarant is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.”
Even were we to conclude that G.N.Y. was unavailable, the testimony of M.S.; A.B., G.N.Y.’s great-grandmother; and McSwain corroborated G.N.Y.’s statement that she had been sexually abused by Steele. Steele contends that a witness to the sexual abuse must corroborate the child victim’s claim of abuse before the child victim’s allegations of sexual abuse may be considered. It would be a rare case where someone other than the victim and the perpetrator can testify about the *28 events that actually occurred. Nevertheless, Steele in his statement to Deputy Chambers confirmed that he slept in the bed with G.N.Y. and his daughter and stepdaughter when his wife was not at home. Recently, in C.L.Y. v. State, [Ms. CR-02-0100, Aug. 29, 2003] — So.2d -, - (Ala.Crim.App.2003), quoting K.D.H. v. State, 849 So.2d 983, 990 (Ala.Crim.App.), cert. denied sub nom. Ex parte K.L.H., 849 So.2d 991 (Ala.2002), we stated:
“ ‘ “Corroborative evidence need not be strong, and need not be sufficient in and of itself to support a conviction; it need not directly connect the accused with the crime, but only tend to do so.” Goodwin v. State, 644 So.2d 1269, 1275 (Ala.Crim.App.1993), quoted with approval in Ex parte Hardley, 766 So.2d 154, 157 (Ala.1999). As the Alabama Supreme Court has noted: “ ‘The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so.’ ” Ex parte Hunt, 744 So.2d 851, 858 (Ala.1999), quoting Mills v. State, 408 So.2d 187, 191 (Ala.Crim.App.1981). Moreover, circumstantial evidence is sufficient to show corroboration. See Goodwin, 644 So.2d at 1275.’ ”
Steele also argues that the trial court did not explicitly determine that the out-of-court statement possessed sufficient guarantees of trustworthiness or make specific findings that the statement was trustworthy. Section 15-25-31 provides:
“An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving [a] child . sexual offense ..., which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met.”
Section 15-25-32 provides:
“An out-of-court statement may be admitted as provided in Section 15-25-31, if:
“(1) The child testifies at the proceeding ... and at the time of such testimony is subject to cross-examination about the out-of-court statements; or
“(2)a. The child is found by the court to be unavailable to testify....
“.... [and]
“b. The child’s out-of-court statement is shown to the reasonable satisfaction of the court to possess particularized guarantees of trustworthiness.”
Section 15-25-38 states: “The court shall support with findings and record any rulings pertaining to ... the trustworthiness of the out-of-court statement.”
Even if the trial court were required to make a finding that the out-of-court statement of G.N.Y. “possess[ed] particularized guarantees of trustworthiness,” the trial court’s technical omission would be harmless “because, based on our review of the evidence and of the statutory factors regarding the trustworthiness of an out-of-court statement of a child victim, as set out in § 15-25-37, we conclude that the out-of-court statements were sufficiently trustworthy to warrant their admission.” K.D.H., 849 So.2d at 991. See also C.L.Y., — So.2d at -. Section 15-25-37, Ala. Code 1975, sets forth the factors a court may consider “[i]n determining whether a statement possesses particularized guarantees of trustworthiness under Section 15-25-32(2)b.” The statement made by G.N.Y. to McSwain was based upon her own “personal knowledge of the event[s].” See § 15-25-37(1). G.N.Y. was of suffi *29 cient “age and maturity” to understand the nature of her allegations. See § 15-25-37(2). The statement was recorded, so there is no dispute that it was made, and Steele does not seek to challenge the credibility of the persons who testified about what G.N.Y. said in her statement, i.e., McSwain, Chambers, and Johnson. See § 15-25-37(3). There was no “apparent motive” for the child victim to “falsify or distort the event,” nor was there any indication that her statement was the result of “bias, corruption, or coercion.” See § 15-25-37(4). The sexual abuse occurred between November 2001 and April 2002. G.N.Y. reported the abuse to her grandmother and gave a videotaped statement to McSwain in April 2002. The occurrence of the event and the reporting of the event were, thus, fairly close in time. See § 15-25-37(5). Five people heard G.N.Y. state that Steele sexually abused her. McSwain, Chambers, and Johnson were privy to the statement made by G.N.Y. at the Child Advocacy Center; and M.S. and A.B. heard G.N.Y. make a very similar statement the day before in M.S.’s home. See § 15-25-37(6). Though there was some testimony that the sexual abuse occurred more than one time, G.N.Y. described one incident with particularity in her videotaped statement. See § 15-25-37(8). There is no indication that G.N.Y.’s description of the events was beyond her “knowledge and experience,” and the terminology used by her seemed to be appropriate for her age. See § 15-25-37(9) & (10). Steele does not contend that the statement made by G.N.Y. was not “directly responsive to questions” or was “suggestive due to improperly leading questions.” See § 15-25-37(11) & (12). There was “extrinsic evidence ... to show the defendant’s opportunity to commit the act complained of in the child’s statement,” namely, Steele’s admission in his statement to Deputy Chambers that he slept in the same bed with G.N.Y. on more than one occasion § 15-25-37(13).
Furthermore, even though the record does not reveal that the trial court made a specific finding relative to the trustworthiness of the out-of-court statement, it is clear that the trial court addressed the issue. Prior to trial, Steele filed a “Motion for Instruction and Evaluation of Child/Victim’s Truthfulness and Qualification as a Witness,” requesting the trial court to voir dire G.N.Y. about her ability to tell the truth before she was permitted to testify.[4] Pursuant to this request, the trial court asked G.N.Y. a series of questions when she was called to the stand to testify. In response to questions by the trial court, G.N.Y. stated that she was 11 years old, that she was living in a foster home, and that she was in the third grade, and she gave the names of her mother, her grandparents, and her great-grandmother. The trial court then asked G.N.Y. questions that established that she understood the difference between the truth and a lie, after which the following occurred:
“[THE COURT]: It’s very important in a court that the witness be sworn to tell the truth, the whole truth and nothing but the truth.
“[G.N.Y.]: So help me God.
“[THE COURT]: Can you do that for me today?
“[G.N.Y.]: Yes, sir.”
(R. 132-36.)
Prior to G.N.Y.’s testifying, the trial court also instructed the jury that the out-of-court statements of G.N.Y. were hear *30 say but that they were admissible under a special statute; that Steele was not able to cross-examine G.N.Y. when the statements were made; and that the jury was “entitled to give those statements what weight or credit, if any, [it] feel[s] they should have.” (R. 131-32.) During trial, McSwain testified that she interviewed G.N.Y, that the interview was videotaped, and that she asked G.N.Y if she understood the importance of telling the truth. (R. 184-87.) When the State offered the videotape into evidence, Steele objected and argued to the trial court those issues he now raises on appeal. (R. 204-05.) The trial court overruled Steele’s objection to the videotape, directed that it be played to the jury, and charged the jury in nearly identical fashion to the previous charge given about the weight, if any, to be given by the jury to the out-of-court statement. (R. 207-08.) After the defense rested, Steele again made a similar argument to the trial court with respect to the videotaped interview, which the trial court again rejected. (R. 284-88.) In his final charge to the jury, the trial court told the jury for the third time that the videotaped interview of G.N.Y. and the testimony of several witnesses regarding what they were told by or what they heard G.N.Y. say constituted hearsay, that such statements were traditionally inadmissible but that they were made admissible pursuant to Alabama statutory law, that G.N.Y. made the statements without Steele having the benefit to cross-examine her at the time she made the statements, that the jury was to consider them in “that light and [it] may disregard these statements or [it] may give these statements what weight or credit, if any, that [it] feels they should have.” (R. 355-56.) There is no reason to believe that the jury did not follow the instructions of the trial court.
For these reasons, the admission of the videotaped statement of G.N.Y. was not error.
III.
Steele next argues that the trial court erred by denying his motions for a judgment of acquittal. However, Steele’s entire argument on appeal is premised upon his claim that the verdict is based upon illegal hearsay testimony, including the admission of G.N.Y.’s out-of-court statement. Because we have determined that the videotaped interview of G.N.Y. was not erroneously admitted into evidence and because Steele has not challenged the testimony of M.S., A.B., McSwain, Johnson, and Chambers on appeal, Steele’s argument is without merit.
Moreover, the evidence at trial established that Steele, a man over 16 years of age, subjected G.N.Y., a person under 12 years of age, to “sexual contact.” § 13A-6-66(a)(3), Ala.Code 1975. “Sexual contact” is defined as “[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.” § 13A-6-60(3), Ala.Code 1975. Steele’s activity, as described by G.N.Y., of placing his finger in G.N.Y.’s “hole” and placing her hand on his penis constitutes sexual contact. See Jordan v. State, 607 So.2d 333, 338-39 (Ala.Crim.App.1992)(testimony of 10-year-old child victim that 50-year-old defendant placed his hand inside her panties and touched her “privates” was alone “sufficient to establish a prima facie case of sexual abuse”). Thus, the motions for a judgment of acquittal were properly denied by the trial court.
TV.
Steele’s final argument is that the sentence imposed by the trial court violated *31 the Alabama Habitual Felony Offender Act (“the HFOA”). § 13A-5-9, Ala.Code 1975. Steele argues that the State failed to provide proper notice of an Ohio conviction it intended to rely upon in seeking an enhancement of his sentence; that the State failed to meet its burden to establish that the earlier conviction justified enhancement of his sentence; and that the Ohio conviction presented by the State at the sentencing hearing would not have been a felony under Alabama law and, thus, should not have been used to enhance his sentence.
Steele’s contention that he was not given timely notice of which conviction the State intended to submit evidence of to the trial court to invoke the HFOA is without merit. Immediately after the jury returned its verdict, the State gave “oral notice of [its] intent to proceed under the Habitual Offender Act.” (R. 370-71.) The State also filed a written notice before the sentencing hearing of its intent to proceed under the HFOA. (C. 44.) At the hearing, the State submitted “a certified copy of a conviction in the Court of Common Pleas, [Medina] County, Ohio, in which the defendant entered a plea of guilty to an amended indictment charging him with attempted burglary” in 1986. (R. 375.) Steele objected to the introduction of the Ohio conviction, claiming that it was a “no contest plea in Ohio” that should not be considered for enhancement purposes. (R. 376.) Although Steele’s counsel stated he had not seen the evidence of the Ohio conviction before the hearing, Steele did not object on this ground or ask for additional time to examine that evidence. (R. 375.) Steele objected to the Ohio conviction being considered for enhancement purposes because, he claimed, it was a nolo contendere plea. The trial court observed that the documentation submitted by the State indicated that Steele’s plea in Ohio was a guilty plea. The trial court denied Steele’s objection. (R. 377.) Because Steele did not object to the State’s failure to provide him with a copy of the Ohio conviction prior to the hearing, Steele has waived this issue. See Bolling v. State, 624 So.2d 1136, 1137 (Ala.Crim.App.1993) (defendant’s failure to object to timeliness of State’s notice to invoke the HFOA relieved the State of its requirement to abide by the notice requirement and constitutes a waiver of issue on appeal).
Steele’s argument that the Ohio conviction for attempted burglary does not constitute a felony under Alabama law, however, is a jurisdictional issue and thus may be raised for the first time on appeal. See Ex parte Brannon, 547 So.2d 68, 68 (Ala.1989)(“[W]hen a sentence is clearly illegal or is clearly not authorized by statute, the defendant does not need to object at the trial level in order to preserve that issue for appellate review.”); Hall v. State, 676 So.2d 954, 955 (Ala.Crim.App.1995)(“[T]he implementation of an illegal sentence may be raised at any time.”). Once the State elects to proceed under the HFOA, it bears the burden of establishing that the presented conviction is a felony under Alabama law. See Rule 26.6(b)(3)(iii), Ala. R.Crim.P. (“At the hearing, the burden of proof shall be on the state to show that the defendant has been convicted of a previous felony.... If the state fails to meet its burden of proof ..., then the defendant shall not be sentenced as an habitual offender.”); Rule 26.6(b)(3)(iv), Ala. R.Crim.P. (“Any conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under ... § 13A-l-2(4) ... or would have constituted a felony under that section had the conduct taken place in Alabama....”). At the sentencing hearing, the prosecutor informed the trial court that the Ohio convic *32 tion was for “attempted burglary.” The State argues on appeal that the crime committed in Ohio would constitute burglary in the third degree under Alabama law, a Class C felony. (See brief of State at 38.) At the sentencing hearing, the State introduced a three-count indictment from Ohio and a “Journal Entry” from the Court of Common Pleas in Medina County, Ohio. (C. 12-14.) The journal entry, a sentencing order, reflects that counts two and three of the indictment were dismissed and that count one was amended “to a charge of ‘Attempted Burglary’ ... [and] [t]he remaining charge would constitute an aggravated felony of the third degree.”[5] Since the guilty-plea conviction was for attempted burglary, the crime, if committed in Alabama, would not have been a Class C felony; rather, it would have been a Class A misdemeanor. See § 13A-4-2(d)(4), Ala.Code 1975 (“An attempt is a ... Class A misdemeanor if the offense attempted is a Class C felony.”); § 13A-7-7(b), Ala.Code 1975 (“Burglary in the third degree is a Class C felony.”).
The State failed to meet its burden of proof to establish that the Ohio conviction would have constituted a felony under Alabama law. Thus, the trial court erred in enhancing Steele’s sentence based upon the Ohio conviction. We hereby remand this cause, for the trial court to resentence Steele without consideration of the Ohio conviction.
In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS. 
McMILLAN, P.J„ and BASCHAB, J., concur. COBB, J., concurs in part and concurs in the result in part, with opinion. SHAW, J., concurs in the result.

. Initials are used throughout the opinion to protect the anonymity of the victim. See Rule 52, Ala.R.App.P.

. A.B., G.N.Y.'s great-grandmother, testified that she was present when M.S. asked G.N.Y. how many times the abuse had occurred, and that G.N.Y. held up 10 fingers. (R. 86-87, 89.) McSwain testified that G.N.Y. told her that she was sexually abused by Steele on more than one occasion. (R. 193-94.)

. The other "grounds” set forth in § 15-25-32(2)a.l. (death), 2. (removal of child), and 4. (disability) are not applicable.

. Steele also filed a pretrial “Objection to Introduction of Video-Taped Interview.” (C. 98.)

. Under Ohio law, burglary can be “a felony of the second degree”; "a felony of the third degree”; or "a felony of the fourth degree.” See § 2911.12, Ohio Rev.Code Ann. (West 2004). The State’s concession that the crime charged fits within § 13A-7-7, Ala.Code 1975, resolves any question about whether burglary in the third degree in Ohio is equivalent to burglary in the third degree in Alabama.