SMITH, Justice.
Christopher McCullough was convicted of one count of second-degree burglary, a violation of § 13A-7-6(b), Ala.Code 1975. The trial court sentenced him to 80 months in prison. In an unpublished memorandum, the Court of Criminal Appeals affirmed McCullough’s conviction and sentence. McCullough v. State, 21 So.3d 755 (Ala.Crim.App.2007). We granted McCullough’s petition for a writ of certiorari to determine whether the testimony of an accomplice was sufficiently corroborated so as to meet the requirements of § 12-21-222, Ala.Code 1975. We conclude that it was not, and we reverse the judgment of the Court of Criminal Appeals and render a judgment of acquittal for McCullough.

Facts and Procedural History

On March 8, 2002, at approximately 11:00 p.m., Myrtle Burdell was awakened by the ringing of the doorbell to her residence. Without turning on a light, Burdell went to her back door and looked out. Seeing no one, she proceeded to the living-room area when she again heard the doorbell; she then heard a noise she described as sounding like an explosion. Burdell ran down the hall, and, upon seeing two men, she screamed at them to get out of her house. The men immediately left through the back door, which they had kicked open. *759 Burdell telephoned the police and, shortly after the telephone call, Detective Angela Spates and other officers from the Lanett Police Department arrived at Burdell’s residence. McCullough and Billy Norris were subsequently arrested and indicted for second-degree burglary in connection with the incident.
At trial, Burdell stated that she could not identify the two men who had entered her house. Specifically, Burdell testified as follows:
“Q. [The prosecutor:] Can you describe the two people in your house, the people that broke in your house?
“A. Can I identify them?
“Q. Can you describe them?
“A. Can I describe them?
“Q. Yes.
“A. No. I think they were short. I think it’s because as they were going down — -I don’t know. I said they were short.
“Q. You don’t [know] if they were?
“A. I can’t identify them, no.
“Q. Now, do you know that young man seated over there at that table?
“A. You know, the day that that happened, I went to the Chicken Stop[1] that morning, and I held the door open for a young man. That could have easily been him.
“Q. Okay.
“A. And they followed me home.
“Q. But you don’t know his name?
“A. That morning I think they knew where I lived. No, I can’t identify him really.”
On cross-examination, Burdell was questioned more extensively about her inability to identify the perpetrators. She testified as follows:
“Q. You said you can’t identify these individuals; is that correct? You can’t identify who was in your house?
“A. No, I cannot identify them.
“Q. What was the light like when you saw them?
“A. It was dark. It was around 11 o’clock at night.
“Q. Do you know what color skin they had?
“A. No, I could not tell. They could have had a ski mask on. They could have had anything. They had on jackets. It was in March. No way I could identify them.
“Q. Nor even tell what race they belonged to?
“A. No, I couldn’t. I thought they were black. It looked black with the night light and the light shining in. Whether it was a ski mask I was looking at or whether they were really black, I don’t know.
“Q. How far away from these individuals — how far away were you from them when you saw them?
“A. May I stand up?
“Q. You may.
“A. That close. (Indicating.)
“Q. Just a little over an arm’s reach away?
“A. Yes, sir.
“Q. Do you have any reason to think anybody followed you home?
“A. At that particular time, I wasn’t afraid to go out at night wherever. I didn’t pay that much attention who was behind me, but I often wondered if somebody followed me home because they were living just above the Chicken Stop where I had gotten fish that day on Friday. They had lived on that street. *760 So in my mind I just wondered, but nothing concrete, no, sir.”
Norris testified at McCullough’s trial that he and McCullough entered Burdell’s home with the intent to steal. He stated that, upon arriving at Burdell’s house, he rang the doorbell and that when no one answered he kicked the door in. According to Norris, both he and McCullough then entered but immediately left when they heard someone say, “Get out of my house.” Norris said he and McCullough ran from Burdell’s house to McCullough’s car, which was parked near the golf course behind Burdell’s house. Norris further stated that he and McCullough had been together all day on the day of the burglary; that he was wearing a bandana and McCullough had on a ski mask while they were in Burdell’s house; and that he had never seen Burdell before his court appearance on the burglary charge stemming from this incident.
Detective Spates’s testimony at McCullough’s trial was limited to her observations of the damage to Burdell’s back door, the location of Burdell’s house in relation to the golf course, and the fact that she had arrested McCullough 18 days after the break-in for the burglary of Burdell’s residence.
McCullough was convicted of second-degree burglary and was sentenced to 80 months in prison. McCullough appealed, arguing that the trial court erred (1) in denying his motion to strike the accomplice testimony of Norris and (2) in denying his motion for a judgment of acquittal. Specifically, McCullough argued that there was no evidence connecting him to the crime other than Norris’s testimony, and he contended that Norris’s testimony was not sufficiently corroborated under § 12-21-222, Ala.Code 1975. The Court of Criminal Appeals affirmed McCullough’s conviction and sentence, stating in its unpublished memorandum that Norris’s testimony was corroborated by Burdell’s and Detective Spates’s testimony.

Discussion

As he did in the trial court and in the Court of Criminal Appeals, McCullough argues before this Court that Norris’s testimony was not sufficiently corroborated to meet the requirements set forth in § 12-21-222, Ala.Code 1975. Section 12-21-222 provides:
“A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
McCullough contends that Burdell’s and Detective Spates’s testimony was “not sufficient evidence tending to connect McCullough with the commission of second-degree burglary ... if the testimony of Billy Norris, the accomplice, is eliminated.” McCullough’s brief, p. 4.
The State contends that it provided sufficient evidence to corroborate Norris’s testimony implicating McCullough in the burglary of Burdell’s house. The Court of Criminal Appeals, in its unpublished memorandum, agreed with the State’s position:
“Norris’s testimony was corroborated by [Burdell’s] testimony that the men who broke into her home rang the doorbell; that they entered her home by kicking in her back door; that they could have been wearing ski masks; and that they turned and ran when she yelled for them to get out of her home. Norris’s testimony was further corroborated by [Detective] Spates’s testimony that the back door of the victim’s home had been kicked in and that the backyard was on a golf course. Consequent *761 ly, the State presented sufficient evidence to corroborate Norris’s testimony and connect [McCullough] with the crime in question. Therefore, [McCullough’s] argument is without merit, and we affirm the trial court’s judgment.”
In addition to Norris’s testimony, the Court of Criminal Appeals relied on Bur-dell’s testimony regarding the manner in which the crime was committed: the ringing of the doorbell, the kicking in of the back door, the possibility that the perpetrators were wearing ski masks, and the fact that her house was located on a golf course.
In Ex 'parte Hardley, 766 So.2d 154 (Ala.1999), this Court addressed the test for determining the sufficiency of evidence corroborating an accomplice’s testimony:
“Discussing § 12-21-222, at § 300.01(5), C. Gamble, McElroy’s Alabama Evidence (5th ed. 1996), Professor Gamble notes:
“ ‘Nonaceompliee evidence of the defendant’s guilt, to be sufficient corroboration of the accomplice’s testimony to take the case to the jury, must tend to connect the defendant with the crime or point to the defendant, as distinguished from another person, as the perpetrator of the crime. Nonac-complice evidence which merely confirms the way and manner in which the crime was committed, but which is colorless and neutral insofar as the defendant’s connection with the crime is concerned, is not sufficient corroboration to warrant submission of the case to the jury.’ ”
766 So.2d at 157.
This Court has elaborated on this test:
“Under § 12-21-222, Ala.Code 1975, a felony conviction ‘cannot be had on the testimony of an accomplice unless corroborated, by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.’ (Emphasis added.) In reviewing a claim of insufficient corroboration, the Alabama appellate courts have stated that
“ ‘[t]he test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense.’
“Andrews v. State, 370 So.2d 320, 321 (Ala.Crim.App.), cert denied, 370 So.2d 323 (Ala.1979), citing Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). The evidence corroborating the accomplice’s testimony and connecting the defendant to the offense can be purely circumstantial evidence. Mathis v. State, 414 So.2d 151 (Ala.Crim.App.1982). But, “‘[i]t must be of a substantive character, must be inconsistent with the innocence of the accused, and must do more than raise a suspicion of guilt .... ” Sorrell v. State, 249 Ala. 292, [293,] 31 So.2d 82, 83 [ (1947) ].’ Ex parte Bell, 475 So.2d 609, 613 (Ala.), cert denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).”
Ex parte Bullock, 770 So.2d 1062, 1067 (Ala.2000).
Furthermore, in Ex parte Stewart, 900 So.2d 475 (Ala.2004), this Court, quoting Ex parte Hunt, 744 So.2d 851, 858-59 (Ala. 1999), noted:
“ ‘The Court of Criminal Appeals has ... added the following caveats to the rule [regarding corroboration of accomplice testimony]:
“ ‘ “ ‘The tendency of the corroborative evidence to connect [the] accused *762 with the crime, or with the commission thereof, must be independent, and without the aid of any testimony of the accomplice; the corroborative evidence may not depend for its weight and probative value on the testimony of the accomplice, and it is insufficient if it tends to connect [the] accused with the offense only when given direction or interpreted by, and read in conjunction with the testimony of the accomplice.’ 23 C.J.S. Criminal Law, Section 812(b)(1961).”
“ ‘Mills v. State, 408 So.2d [187,] 191-92.’
“ ‘ “ ‘ “LEJvidence which merely raises a conjecture, surmise, speculation, or suspicion that [the] accused is the guilty person is not sufficiently corroborative of the testimony of an accomplice to warrant a conviction.” 28 C.J.S. Criminal Law, Section 812(5)(b).’ Staton v. State, 397 So.2d 227, 232 (Ala.Crim.App.1981).”
“ ‘Steele v. State, 512 So.2d 142, 143-44 (Ala.Crim.App.1987).’ ”
900 So.2d at 477-78 (emphasis added).
Applying these principles to the facts of this case, we conclude that the Court of Criminal Appeals erred in affirming McCullough’s conviction and sentence. Applying the rule that requires that Norris’s testimony must first be subtracted and the remaining evidence examined, we are left with the testimony of Detective Spates and of the victim, Burdell. Detective Spates’s testimony provided evidence merely showing “the commission of the offense or the circumstances” surrounding the crime. See § 12-21-222, Ala.Code 1975. Detective Spates’s testimony does not connect McCullough to the crime but simply shows that a crime had been committed. When considered without the testimony of Norris, the alleged accomplice, this evidence does not tend to show McCullough’s guilt.
Likewise, Burdell’s testimony deals with the circumstances of the crime rather than any participation of McCullough in the burglary. Although she was a little more than an arm’s length away from the perpetrators, the only characteristics Burdell could provide as to their identity were that she thought that the two men were wearing jackets and that they might have been black or they could have been wearing ski masks.[2] Burdell also testified that she initially told the police investigating the burglary that the men were “short,” but at trial she concluded that she could not attest to their height as an identifying characteristic.
Without Norris’s testimony, Burdell’s testimony does no more than identify the burglars as males, possibly black or possibly wearing ski masks, perhaps short, but perhaps not. This evidence does no more than “raise a suspicion of [McCullough’s] guilt.” Bullock, 770 So.2d at 1067. Bur-dell’s testimony is insufficient corroboration of Norris’s testimony because it “tends to connect [McCullough] with the offense only when given direction or interpreted by, and read in conjunction with the testimony of the accomplice [Norris].” Stewart, 900 So.2d at 478.
The remaining evidence provided by Burdell against McCullough was her testimony regarding the man she had seen at the Chicken Stop restaurant earlier in the day of the robbery. In his dissent to the Court of Criminal Appeals’ unpublished memorandum, Judge Welch addressed the problems with this testimony:
“[T]he trial court ruled that ‘based on the testimony of the victim in this case, *763 specifically her testimony as to the fact that she identified that she could have possibly seen the alleged perpetrator of the crime that day and that he possibly followed her home and then perpetrated the crime’ Norris’s testimony was sufficiently corroborated. (R. 46.)
“Unlike the majority, I do not believe that Norris’s testimony was sufficiently corroborated to sustain a conviction for second-degree burglary.
“ ‘A conviction for a felony cannot be had on the testimony of an accomplice unless the testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. Code of Alabama 1975, § 12-21-222. The test for determining the sufficiency of the corroboration is a subtraction process. First, the testimony of the accomplice must be eliminated, and then if, upon examination of all the other evidence, there is sufficient evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.’
“Carden v. State, 612 So.2d 509, 513 (Ala.Crim.App.1992) (citations omitted).
“To prove a prima facie case of second-degree burglary, the State had to present evidence showing that McCullough ‘unlawfully enter[ed] a lawfully occupied dwelling-house with intent to commit a theft or felony therein.’ § 13A-7-6(b), Ala.Code 1975. I do not believe that the State presents any non-accomplice evidence that connected McCullough to the crime or that corroborated Norris’s testimony. In my opinion, the testimony of both Burdell and [Detective] Spates merely showed that the offense occurred and the circumstances of the offense. See § 12-21-222, Ala.Code 1975. Moreover, I do not agree with the trial court’s finding that Burdell’s testimony that McCullough ‘could have’ been the man she held a door open for at the Chicken Stop restaurant and that the man could have followed her home corroborated Norris’s testimony. (R. 24.)
“ ‘Q. [The prosecutor:] [D]o you know that young man [referring to McCullough]?
“ ‘A. [Burdell:] You know, the day that that happened, I went to the Chicken Stop that morning, and I held the door open for a young man. That could have easily been him.
“ ‘Q. Okay.
“ ‘A. And they followed me home.
“ ‘Q. But you don’t know his name?
“ ‘A. That morning I think they knew where I lived. No, I can’t identify him really.’
“(R. 24.)
“It is clear from the context of Bur-dell’s entire testimony that the above was not meant as an assertion that McCullough was the man from the Chicken Stop or an assertion that a man from the Chicken Stop did follow her home; it was merely Burdell’s hypothesis that the man from the Chicken Stop was responsible for the burglary. Thus, I do not believe this testimony — which is merely conjecture — can serve as corroboration of accomplice testimony.”
McCullough v. State, 21 So.3d at 757 (Welch, J., dissenting).
We agree with Judge Welch’s dissenting opinion. Burdell’s testimony does not show that McCullough was, in fact, involved in the burglary. Instead, her testimony is merely conjecture or suspicion, which is insufficient to support a conviction. Burdell could not identify McCullough as one of the men who was in her house on the night of the burglary or as the man she had seen earlier that day at *764 the Chicken Stop. Moreover, her speculation that the man she encountered at the Chicken Stop was one of the intruders is further weakened by Norris’s testimony that he and McCullough had been together all day on the day of the burglary and that Norris had never seen the victim before he appeared in court for the burglary charge stemming from this incident.

Conclusion

Because the evidence was insufficient under § 12-21-222, Ala.Code 1975, to corroborate Norris’s testimony that McCullough had participated in the burglary, we reverse the judgment of the Court of Criminal Appeals and render a judgment of acquittal.
REVERSED AND JUDGMENT RENDERED. 
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, and MURDOCK, JJ., concur.
SHAW, J., recuses himself.**

. The Chicken Stop is a restaurant located in Lanett.

. The State points out that "while Norris’s race is not apparent from the record, the case action summary ... shows [that] McCullough is black.” State’s brief, p. 11.