WINDOM, Judge.
Jason Michael Green appeals his convictions for three counts of second-degree arson, violations of § 13A-7-42, Ala. Code 1975, and one count of second-degree theft of property, a violation of § 13A-8-4, Ala. Code 1975.
*389 A Montgomery County grand jury issued an indictment charging Green with six counts of second-degree arson and one count of second-degree theft of property. Count I charged Green with second-degree arson for a fire that burned a barn belonging to John McNeil (“the McNeil arson”). Count II charged Green with second-degree arson for a fire that burned a mobile home belonging to Henry Pickett (“the Pickett arson”). Count III charged Green with second-degree arson for a fire that burned part of a house belonging to Marietta Russell (“the Russell arson”). Count IV charged Green with second-degree theft of property for the theft of two shotguns and a camera from a house belonging to Wayne and Joanne Currie (“the Currie theft”). Count V charged Green with second-degree arson for a fire that burned property belonging to Mike Darnell (“the Darnell arson”). Count VI charged Green with second-degree arson for a fire that burned property belonging to Reggie Du-bose (“the Dubose arson”). Count VII charged Green with second-degree arson for a fire that burned a house belonging to Wayne and Joanne Currie (“the Currie arson”).
After hearing all of the evidence and being instructed by the circuit court on the applicable law, the jury found Green guilty on the following four counts: 1) count I, the McNeil arson; 2) count III, the Russell arson; 3) count IV, the Currie theft; and 4) count VII, the Currie arson.[1] The circuit court sentenced Green to concurrent terms of: 3 years in prison for McNeil arson (count I); 20 years in prison for the Russell arson (count III); 10 years in prison for the Currie theft (count IV); and 20 years in prison for the Currie arson (count VII).
At trial, the State’s evidence tended to establish that on June 1, 2005, Green, Patrick Brassell, and Jason Wilhite attended a meeting for Pike Road volunteer firefighters at the fire station located on Wallahat-chee Road. Each of these men was a volunteer firefighter for the Pike Road Volunteer Fire Department. According to Wilhite and Brassell, after this meeting, Green suggested they set a fire because there had not been many recent fires. (R. 130-31, 170.) Green, Wilhite, and Brassell then rode in Green’s truck to John McNeil’s barn, which was located on Wal-lahatchee Road. When they arrived at the barn, Wilhite and Green got out of the truck and entered the barn. So that no one would see Green’s truck at the barn, Brassell got into the driver’s seat and drove down the road. Once inside the barn, Green placed a bottle containing flammable liquid under some hay and ignited it. (R. 132-33.)
After the barn was ablaze, Brassell returned and picked up Green and Wilhite. The three men then drove back to the fire station where they each departed in their own vehicles. Shortly after leaving, the three men received an alarm call regarding the fire at the barn and returned to the fire station to help fight the fire. (R. 133— 36.) The firefighters, however, were not able to extinguish the fire, and the barn was a total loss.
On November 16, 2006, Green and Justin Gorman, another volunteer fireman, were at the Pike Road fire station. The two men decided to go across the street to Joanne Currie’s house at 3504 Wallahat-chee Road and set it on fire. According to Gorman, the two broke in the front door and entered the house. While in the *390 house, Gorman stole two guns and Green stole a camera. (R. 263-64.) Thereafter, Green used gas and candle oil that he found on the Curries’ back porch to set the Curries’ bedroom on fee. (R. 263, 298, 311-14.) After setting the Currie house on fee, Green and Gorman left with the Curries’ two shotguns and camera.
Later that morning, Joanne Currie received a telephone call from a real estate agent informing her that her house was on fee. Currie and her husband, who were 55 miles away at the time, drove to their house and found “fire trucks everywhere.” (R. 234.) Currie described the state of her house after the fire as “a total disaster.” (R. 235.) While examining the fire damage, Currie noticed that her front door had been kicked in and that two shotguns and a camera were missing. (R. 231-35, 238, 245^49.) Subsequently, while executing a search warrant, law-enforcement officers recovered the Curries’ camera from inside Green’s truck. At trial, Mrs. Currie testified that the camera seized from Green’s truck belonged to her. Further, the camera seized from Green’s truck contained pictures of the Currie family. (R. 249-51.)
Mrs. Currie also testified that she kept a gas can and a bottle of candle oil on her back porch. After the fire, fire and insurance investigators came to the house to examine the damage. At some point during the investigation, Green arrived and went directly to the bedroom and retrieved the gas can and candle-oil bottle. Green then gave those items to the investigators. (R. 311-14.)
On November 30, 2006, two weeks after the Currie fire, Green and Gorman went to a vacant house that Marietta Russell inherited from her mother, which was located at 4107 Old Pike Road. (R. 207, 209, 267.) Once there, Green and Gorman broke down the back door and entered the house. They then got a couch from one of the front rooms and moved it into a bedroom. At that point, they poured lantern oil on the couch and set it on fire. After setting the couch on fee, Green and Gor-man went back to the fire station and “waited for the call to come in.” (R. 267.) When the fire call came in, the two responded to the fee.
Later that day, Mrs. Russell received a call from a neighbor informing her that her mother’s house was on fire. (R. 208.) Although the house had been vacant since her mother’s death, Russell and her sister checked on it daily to make sure the doors were locked and everything was secure. (R. 208.) Upon learning that her childhood house was burning, Russell immediately drove to the house, where she found the City of Montgomery Fire Department and the Pike Road Volunteer Fire Department fighting the fire. (R. 209.) According to Mrs. Russell, the couch from the living room had been moved into the bedroom, a flammable liquid had been poured over it, and it had been set on fire. (R. 212.)
I.
On appeal, Green first argues that the circuit court erred in denying his motion to suppress evidence in the form of the Curries’ camera, which law-enforcement officers found in his truck while executing a search warrant. Specifically, he argues that the stolen camera should have been suppressed because it was not listed in the search warrant as an item to be seized; therefore, the warrant failed to satisfy the particularity requirement contained in the Fourth Amendment to the United States Constitution.
The purpose of the Fourth Amendment particularity requirement is to prevent “[gjeneral exploratory searches.” Palmer v. State, 426 So.2d 950, 952 (Ala. *391 Crim.App.1983). “General exploratory searches and seizures, with or without a warrant, can never be justified and are forbidden and condemned.” Id. (citing Matron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927)). In Ex parte Jenkins, 26 So.3d 464, 474 (Ala.2009), the Alabama Supreme Court explained that “the requirements of particularity [of a search warrant] are met if the substance to be seized is described with reasonable particularity which, in turn, is to be evaluated in light of the rules of practicality, necessity, and common sense.” (internal citations and quotations omitted).
Here, the search warrant authorized the officers to search for and to lawfully seize “weapons and any and all illegal items or substances used in the commission of burglary, theft, arson or any other felonies or proceeds thereof.” (C. 73.) (Emphasis added.) The search warrant also defined the area to be searched “to encompass the main building, any vehicles, storage buildings, and curtilage located at 47 Honeysuckle Lane, Cecil, Alabama, 36103.” (C. 73.) (Emphasis added.) The stolen camera clearly was a proceed of Green’s illegal activity, i.e., the theft from the Curries. Because the officers discovered the camera in the course of conducting a search pursuant to a valid warrant that adequately described with reasonable particularity what was being sought, the circuit court did not abuse its discretion in denying Green’s motion to suppress the camera.
Moreover, even if one were to presume that the warrant was insufficiently particular as to the camera, the circuit court’s denial of Green’s motion to suppress was proper under the plain-view doctrine. “The plain-view seizure of the items not listed in a search warrant is justified where the officer’s intrusion into the residence is pursuant to a valid search warrant and the item seized is of an incriminating nature.” Rowe v. State, 662 So.2d 1227, 1229 (Ala.Crim.App.1995) (internal citations and quotations omitted). When the police, while conducting a lawful search under a warrant, find evidence of another offense not related to the crime for which the warrant was issued, they may lawfully seize that evidence under the plain-view doctrine. Zumbado v. State, 615 So.2d 1223, 1239 (Ala.Crim.App.1993); Baty v. State, 401 So.2d 308, 310 (Ala.Crim.App.1981).
Here, before the search warrant was executed, Gorman told Investigator Griffith about the camera he and Green had stolen. (R. 55.) Later, while executing the warrant, Investigator Griffith lawfully entered Green’s truck pursuant to the warrant. (R. 56.) Inside the truck, Investigator Griffith discovered the camera that Gorman had described to her earlier. (R. 53-57.)
Because Investigator Griffith was legally in Green’s truck pursuant to a search warrant when she discovered the camera, which she knew to be stolen property based on Gorman’s description, the circuit court did not abuse its discretion by allowing the camera to be admitted at trial under the plain-view doctrine. Therefore, this issue does not entitle Green to any relief.
II.
Green next argues that the circuit court erred in denying his motion for a judgment of acquittal. Specifically, Green argues that the State failed to present evidence corroborating the testimony of his accomplices; therefore, there was insufficient evidence to sustain his convictions.
Initially, this Court notes that “ ‘[i]n determining the sufficiency of the evidence to sustain a conviction, a review *392 ing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998) (quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985)). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997) (quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992)). “‘When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’ ” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998) (quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990)). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
Further, pursuant to § 12-21-222, Ala.Code 1975, a felony conviction “cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.” “ ‘The test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense.’” Ex parte Bullock, 770 So.2d 1062, 1067 (Ala.2000) (quoting Andrews v. State, 370 So.2d 320, 321 (Ala.Crim.App.1979), citing in turn Miller v. State, 290 Ala. 248, 275 So.2d 675, 677 (1973)).
“The term ‘corroborate,’ when used in this connection, has been said to mean, in its legal significance, to strengthen, not necessarily the proof of any specific fact as to which the accomplice has testified, but the probative, criminating force of his or her testimony.” 23 C.J.S. Criminal Law § 1364 (2006) (footnotes omitted). See also Kuenzel v. State, 577 So.2d 474, 518 (Ala.Crim.App.1990) (defining corroborate as “to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminat-ing force of his testimony”) (citations and quotations omitted). “While corroborating evidence need not be strong, it ‘... must be of substantive character, must be inconsistent with the innocence of a defendant and must do more than raise a suspicion of guilt.’ ” Booker v. State, 477 So.2d 1388, 1390 (Ala.Crim.App.1985) (quoting McCoy v. State, 397 So.2d 577 (Ala.Crim.App.1981)). See also McGowan v. State, 990 So.2d 931, 987 (Ala.Crim.App.2003) (explaining that although evidence corroborating an accomplice’s testimony need only be slight, it must tend to connect the defendant to the crime and be inconsistent with innocence). Although the corroboration must tend to connect the defendant to the crime, it “need not be sufficiently strong by itself to warrant a conviction.” Miles v. State, 476 So.2d 1228, 1234 (Ala.Crim.App.1985). See also Gavin v. State, 891 So.2d 907, 976 (Ala.Crim.App.2003) (explaining that corroborating evidence by itself need not be sufficient to sustain a *393 conviction). Stated differently, “[cjorrobo-rative evidence need not directly connect the accused with the offense but need only tend to do so.” Pace v. State, 904 So.2d 331, 347 (Ala.Crim.App.2003) (quoting Ware v. State, 409 So.2d 886, 891 (Ala.Crim.App.1981), quoting in turn State v. Canada, 107 Ariz. 66, 481 P.2d 859 (1971)). See also Miles, 476 So.2d at 1234 (citing Lambert v. State, 55 Ala.App. 669, 318 So.2d 364 (1975), and Peoples v. State, 56 Ala.App. 290, 321 So.2d 257 (1975)) (“The only requirement is that it tend to connect the accused with the offense.”). Indeed, as this Court has repeatedly explained, accomplice “ ‘[cjorroboration need only be slight to suffice,’” Stoinski v. State, 956 So.2d 1174, 1182 (Ala.Crim.App.2006) (quoting Ingle v. State, 400 So.2d 938, 940 (Ala.Crim.App.1981)), and the plain language of § 12-21-222, Ala.Code 1975, requires only “other evidence tending to connect the defendant with the commission of the offense.... ” (emphasis added).
Additionally, “it is not necessary that the accomplice should be corroborated with respect to every fact as to which he or she testifies, nor is it necessary that corroboration should establish all the elements of the offense.” 23 C.J.S. Criminal Law § 1369 (2006) (footnotes omitted). See also Arthur v. State, 711 So.2d 1031, 1059 (Ala.Crim.App.1996) (citations omitted) (“Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice.”); Ferguson v. State, 814 So.2d 925, 952 (Ala.Crim.App.2000) (same). “If the accomplice is corroborated in part, or as to some material fact or facts tending to connect the accused with the crime, or the commission thereof, this is sufficient to authorize an inference by the jury that he or she has testified truly even with respect to matters as to which he or she has not been corroborated, and thus sustain a conviction.” 23 C.J.S. Criminal Law § 1369 (2006) (footnotes omitted). See also Dykes v. State, 30 Ala.App. 129, 133, 1 So.2d 754, 756-57 (1941) (citations omitted) (explaining that “[i]t has been repeatedly held, and advisedly so, that the corroboration of the testimony of an accomplice need not go to every material fact to which he testifies. If corroborated in some of such facts the jury may believe that he speaks the truth as to all.”). Further, circumstantial evidence may be sufficient to corroborate the testimony of an accomplice. Arthur, 711 So.2d at 1059 (citing Jackson v. State, 451 So.2d 435, 437 (Ala.Crim.App.1984)). See also Steele v. State, 911 So.2d 21, 28 (Ala.Crim.App.2004) (explaining that accomplice testimony may be corroborated by circumstantial evidence).
“Whether such corroborative evidence exists is a question of law to be resolved by the trial court, its probative force and sufficiency being questions for the jury.” Caldwell v. State, 418 So.2d 168, 170 (Ala.Crim.App.1981) (citations omitted). With these principles in mind, this Court turns to Green’s argument that the circuit court erred in submitting the charges to the jury due to a lack of evidence corroborating the accomplices’ testimony.
A.
Reviewing the evidence presented at trial relating to the Currie theft and arson (counts IV and VII), the State presented sufficient evidence corroborating Justin Gorman’s testimony to allow these counts to be submitted to the jury.[2] Excluding Gorman’s testimony, the State pre *394 sented evidence indicating that on November 16, 2006, individuals broke in the front door and entered the Curries’ house. While in the house, the individuals stole two firearms and a digital camera. During this time, the individuals removed gas and candle oil containers found on the Curries’ back porch and took the containers to the Curries’ bedroom. The individuals then set fire to the gas and candle oil, left the containers in the Curries’ bedroom, and left the house with the stolen property.
Later, after insurance investigators came to the house to examine the damage, Green arrived and went straight to the bedroom, retrieved the gas can and candle-oil bottle, and gave those items the investigators. (R. 311-14.) The fact that Green immediately went to the room where the fire was started and retrieved the accelerant canisters used to start the fire suggests a familiarity with the crime likely reserved for an individual responsible for it. As this Court has held, “[a]n accused’s consciousness of guilt as shown by the evidence may be corroborative.” Jacks v. State, 364 So.2d 397, 405 (Ala.Crim.App.1978). Consciousness of guilt may be inferred from an accused’s actions after the offense and such actions “may be considered as corroborative evidence.” Arthur, 711 So.2d at 1061. See Ballard v. State, 767 So.2d 1123, 1130 (Ala.Crim.App.1999) (“The post-crime conduct of the defendant shows his or her state of mind which has been characterized by our courts as consciousness of guilt, and may be admitted as circumstantial evidence of guilt.”); Jacks, 364 So.2d at 405 (“Additionally, sufficient corroboration of the testimony of an accomplice may be furnished ... by the suspicious conduct of the accused .... ”); 23 C.J.S. Criminal Law § 1380 (2006) (footnotes omitted) (explaining that “[sjufficient corroboration of the testimony of an accomplice to warrant a conviction may be furnished by the suspicious conduct of the accused”). Green’s suspicious conduct during the fire investigation tends to connect him with the Cur-rie theft and arson. See generally, Pace, 904 So.2d at 347.
In addition to Green’s suspicious conduct, a law-enforcement officer found the Curries’ stolen camera in Green’s truck. “The possession by the accused of the fruits of the crime, of itself[,] generally tends to connect him or her with the commission of the crime, and [is] sufficient to satisfy the corroboration requirement for accomplice testimony.” 23 C.J.S. Criminal Law § 1376 (2006) (footnotes omitted); see also Bradley v. State, 450 So.2d 173, 176 (Ala.Crim.App.1983) (holding that a defendant’s possession of the fruits of the crime is sufficient to corroborate an accomplice’s testimony). Further, Green acknowledged that the camera found inside his truck was corroborating evidence for the Currie theft and arson. (R. 362.) Additionally, when law enforcement found the camera, Green falsely stated that the camera belonged to the fire department. Green’s attempt- to conceal from law enforcement the fact that the camera was stolen property also tends to connect him with the Currie arson and theft. See Leonard v. State, 459 So.2d 970, 972 (Ala.Crim.App.1984) (holding that a defendant’s attempt to conceal a crime may corroborate an accomplice’s testimony); 23 C.J.S. Criminal Law § 1377 (2006) (footnotes omitted) (explaining that “[statements made by accused which are contradictory, inconsistent, evasive, or false have been found to be corroborative”).
Based on the foregoing, the State presented evidence corroborating Gorman’s testimony. Evidence establishing Green’s post-crime suspicious conduct, his possession of fruits of the crime, and his attempt to conceal the crime sufficiently connected *395 Green to the Currie theft and arson. Accordingly, the circuit court correctly submitted those charges to the jury.
B.
Next, reviewing the evidence presented at trial relating to the Russell arson (count III), the State also presented sufficient evidence corroborating Gorman’s testimony to allow this charge to be submitted to the jury. The State’s evidence tended to show that the Currie theft and arson and the Russell arson were committed in a similar manner and were part of a common plan or scheme. (R. 100) (arguing that there is a “common vein” throughout all of the crimes, i.e., the fires were set in bedrooms); (R. 318)(the circuit court recognized that all of the crimes were connected).
“[E]vidence corroborating an accomplice’s testimony on one crime charged can be used to provide the required corroboration on other crimes charged where a common plan or scheme is involved.” 23 C.J.S. Criminal Law § 1369 (2006) (footnotes omitted). See People v. Adams, 222 A.D.2d 1093, 1094, 636 N.Y.S.2d 242 (1995) (holding that “evidence corroborating the accomplice’s testimony on one crime charged may be used to provide the required corroboration on other crimes charged [when those crimes are part of] a common plan or scheme”); People v. Mensche 276 A.D.2d 834, 835, 714 N.Y.S.2d 377, 379 (2000) (holding that when there is evidence of a “common plan or scheme with respect to [a] series of [crimes], evidence corroborating an accomplice with respect to one offense is sufficient to provide the required corroboration with respect to the other similar crimes”); People v. Spencer, 272 A.D.2d 682, 684, 708 N.Y.S.2d 488, 491 (2000) (same); People v. Glanda, 5 A.D.3d 945, 952, 774 N.Y.S.2d 576, 582-83 (2004) (same); see also People v. Goldfeld, 60 A.D.2d 1, 400 N.Y.S.2d 229 (1977) (removing the burden of showing corroboration for every count if there is sufficient evidence of a common scheme or plan). “[S]imilarity in the commission of [multiple] crimes in a given locality is itself a circumstance tending to corroborate the testimony of an accomplice.” People v. Blackwell, 257 Cal.App.2d 313, 320-21, 64 Cal.Rptr. 642, 647 (1967) (citing People v. Robinson, 184 Cal.App.2d 69, 77, 7 Cal.Rptr. 202, 207 (1960)). Cf. McConnell v. State, 166 Ga.App. 530, 531-32, 304 S.E.2d 733, 735 (1983) (holding that past crimes may corroborate an accomplice’s testimony regarding a current crime when the modus operandi of the crimes are similar). It is axiomatic that when an individual and an accomplice commit a series of crimes as part of a common scheme or plan, evidence corroborating the accomplice’s testimony regarding one of the offenses “tend[s] to connect the accused with the [other] offense[s],” Miles, 476 So.2d at 1234, that were committed in a similar manner and as part of the common scheme or plan.[3] Cf. Pace, 904 So.2d at 347 (quoting Ware, 409 So.2d at 891, quoting in turn Canada, 107 Ariz. 66, 481 P.2d 859) (holding that *396 “[corroborative evidence need not directly connect the accused with the offense but need only tend to do so”). By presenting evidence corroborating an accomplice’s testimony regarding one crime in a series of crimes that were part of a common scheme or plan, the State has presented circumstantial evidence establishing “some material fact or facts tending to connect the accused with the crime [that are] sufficient to authorize an inference by the jury that [the accomplice] has testified truly even with respect to matters as to which he or she has not been corroborated.... ” 23 C.J.S. Criminal Law § 1369 (2006) (footnotes omitted). See also Dykes, 1 So.2d at 756-57 (explaining that “[i]t has been repeatedly held, and advisedly so, that the corroboration of the testimony of an accomplice need not go to every material fact to which he testifies. If corroborated in some of such facts the jury may believe that he speaks the truth as to all”); Arthur, 711 So.2d at 1059 (citations omitted) (“Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice.”).
Excluding Gorman’s testimony, the evidence presented at trial indicated that the Currie theft, the Currie arson, and Russell arson were committed in a similar manner and were part of a common scheme or plan. The State presented evidence indicating that Green’s motive for starting the fires was his desire, as a fireman, to respond to fires. (R. 131, 170.)[4] The Cur-rie theft and arson and the Russell arson were only four miles apart.[5] Both houses were in the same area as the Pike Road Volunteer Fire Station on Wallahatchee Road where both Green and Gorman were volunteer firefighters. Furthermore, a mere two weeks lapsed between the Currie arson and the Russell arson.
In addition to the common motive, the common locale, and the short time frame, the manner in which the two arsons were committed was very similar. In each fire, the individuals who set the fire broke in a door to gain access to the house. In each case, the individuals used an accelerant to set the fires. And, in each case, the individuals set the fire specifically in the bedrooms. In fact, because the Russell house was vacant, the individuals had to drag a couch from another room into the bedroom in order to have an item in the bedroom that could be saturated with the accelerant and set on fire.
With evidence indicating a common motive for the crimes and evidence indicating that the crimes were committed in a similar manner, in a common locale, and within a short time frame, the State presented sufficient evidence to establish that the Currie arson and the Russell arson were part of a common scheme or plan. See Blackwell, 257 Cal.App.2d at 320-21, 64 Cal.Rptr. at 647 (“[Similarity in the commission of [multiple] crimes in a given locality is itself a circumstance tending to corroborate the testimony of an accomplice.”); Ex parte Bullock, 770 So.2d at 1067 (ruling that although “[p]roof of a defendant’s motive, alone, is no sufficient to corroborate an accomplice’s testimony and to connect the defendant to the crime[,] ... proof of a defendant’s motive *397 coupled with other facts connecting the defendant to the crime may be sufficient to corroborate an accomplice’s testimony”). As discussed above, the State presented sufficient evidence corroborating Gorman’s testimony relating to the Currie theft and arson. Because the Currie theft, the Cur-rie arson and the Russell arson were part of a common scheme or plan, the “evidence corroborating [Gorman’s] testimony on [the Currie theft and arson] provide[d] the required corroboration on [the Russell arson].” Adams, 222 A.D.2d at 1094, 636 N.Y.S.2d at 242. Therefore, the circuit court did not err in submitting the Russell arson count to the jury.
C.
In regard to the evidence presented at trial relating to the McNeil arson (count I), the State failed to present any evidence, aside from the accomplice testimony, that would tend to connect Green to the crime. Excluding James Wilhite’s and Patrick Brassell’s testimony, the State’s evidence merely established that the McNeil barn burned to the ground and that arson could not be ruled out as a cause of the fire.[6] Evidence establishing that the McNeil barn burned and that arson could not be ruled out as the cause of the fire falls far short of the type of evidence necessary to connect Green to the arson. Cf. Ex parte McCullough, 21 So.3d 758, 762 (Ala.2009) (holding that the State presented insufficient evidence to corroborate an accomplice’s testimony when without the accomplice’s testimony, the State’s evidence merely established that a burglary occurred and that the burglars were male).
Moreover, the State did not present sufficient evidence to connect the McNeil arson with a common scheme or plan. Although the motive for the fires was the same, i.e., the desire of the volunteer firefighters to respond to fires, almost one and one-half years lapsed between the McNeil arson and the Currie arson. Further, the McNeil arson involved a barn while the Currie arson involved a house. Finally, Green did not use the same accomplices in the McNeil arson and the Currie arson.
In short, excluding Wilhite’s and Bras-sell’s testimony, the State failed to present any “ ‘incriminating evidence tending to connect [Green] with the commission of the [McNeil arson].’ ” Ex parte Bullock, 770 So.2d at 1067 (quoting Andrews, 370 So.2d at 321, citing in turn Miller, 275 So.2d at 677). Therefore, the State failed to present sufficient evidence to sustain Green’s conviction for the McNeil arson, and the circuit court erred in denying Green’s motion for a judgment of acquittal on that charge. See § 12-21-222, Ala. Code 1975.
Based on the foregoing, the circuit court’s judgment is affirmed as to counts III, IV, and VII (the Currie theft, the Currie arson, and the Russell arson). However, because the evidence was insufficient under § 12-21-222, Ala.Code 1975, to corroborate Wilhite’s and Brassell’s testimony regarding the McNeil arson (count I), as to that count, the judgment of the circuit court is reversed and a judgment of acquittal is rendered for Green. See Ex parte McCullough, 21 So.3d at 764.
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED IN PART.
*398 WISE, P.J., and WELCH and KELLUM, JJ., and MADDOX, Special Judge,[7] concur. MAIN, J., recuses himself.

. The jury acquitted Green on count II, the Pickett arson; count V, the Darnell arson; and count VI, the Dubose arson.

. It is undisputed that Gorman was Green’s accomplice in the Currie theft and arson and the Russell arson. Therefore, this court need not address the evidence establishing Gor-man's complicity in those crimes.

. This Court notes that allowing "evidence corroborating an accomplice’s testimony on one crime charged [to be] used to [corroborate the accomplice’s testimony] on other crimes charged where a common plan or scheme is involved," 23 C.J.S. Criminal Law § 1369 (2006), does not run afoul of the language in § 12-21-222, Ala.Code 1975, stating that "merely showing] the commission of the offense or the circumstances thereof [ ] is not sufficient.” Evidence establishing a series of crimes connected by a common scheme or plan and evidence corroborating an accomplice's testimony regarding one of those crimes establishes more than merely the circumstances of the crime. Instead, such evidence tends to connect the defendant to each of the crimes. Cf. Adams, 222 A.D.2d at 1094, 636 N.Y.S.2d at 242.

. James Wilhite and Patrick Brassell provided testimony relating to Green's motive. These two individuals were not accomplices in the Currie theft and arson or the Russell arson.

. The Currie arson occurred at 3504 Walla-hatchee Road, Pike Road, Alabama. The Russell arson occurred at 4107 Pike Road, Pike Road, Alabama. This Court takes judicial notice that the distance between these two addresses is roughly four miles. See State v. Green, 992 So.2d 82, 85, n. 1 (Ala.Crim.App.2008).

. It is undisputed that Wilhite and Brassell were Green's accomplices during the McNeil arson. Therefore, it is unnecessary for this Court to discuss the evidence establishing their complicity in that crime. Gorman, however, was not an accomplice in the McNeil arson.