BURKE, Judge.
Andere Jackson was convicted of felony murder, pursuant to § 13A-6-2(A)(3), Ala. Code 1975. Jackson was sentenced to 35 years’ imprisonment; the sentence to be served concurrently with any other sentences he was serving, and he was given credit for 784 days in jail. The circuit court also ordered Jackson to pay restitution of $2,500 to Melissa Russell and $5,000 to the Alabama Crime Victims Compensation Fund, as well as pay a victim’s compensation fund award of $200. Jackson was also ordered to pay court costs and attorney fees. Jackson filed a motion for judgment of acquittal or, in the alternative, for a new trial. Jackson’s postjudgment motion was denied. This appeal follows.
Jackson was arrested on March 19, 2009, and was charged with two counts of capital murder resulting from the death of Derrick Reynolds. On January 19, 2010, Jackson was indicted by the Tallapoosa County grand jury for capital murder for killing Reynolds during a robbery and for capital murder for killing Reynolds during a kidnapping. On March 26, 2010, Jackson was arraigned, and he entered a plea of not guilty. Jackson’s trial commenced on April 4, 2011. After the conclusion of the State’s evidence, Jackson moved for a judgment of acquittal on the ground that the State failed to present sufficient corroborative evidence of the testimony of his alleged accomplices. After both sides rested, Jackson orally renewed his motion for a judgment of acquittal, which was denied. On April 7, 2011, the jury returned its verdict, finding Jackson guilty of the lesser-ineluded offense of felony murder. On April 11, 2011, Jackson filed a motion for a judgment of acquittal or, in the alternative, for a new trial. Jackson was sentenced on May 2, 2011, and Jackson’s postjudgment motion was denied on May 3, 2011. On May 9, 2011, Jackson filed a notice of appeal.
At trial, the State presented evidence from accomplices that tended to show the following.
On or about March 10, 2009, Rodriquez Jackson (“Rodriquez”) telephoned Shakila Brisker and told her he wanted to rob someone in Alexander City. Brisker and Jasmyne Gilbert suggested Derrick Reynolds as a victim because he had a lot of money. Between February 4, 2009, and March 16, 2009, Jackson and Cornelius Harris discussed robbing Reynolds with Brisker at her cousin Rhonda Dunn’s house in Wetumpka. There was no plan to kill Reynolds during the robbery.
On March 17, 2009, Brisker, Gilbert, Jackson, Harris, and Rodriquez met at Gilbert’s apartment in Alexander City to plan the robbery of Reynolds. The plan was for Jackson to subdue Reynolds and bind him with tape. Harris was to put the gun to his head and escort him into an empty apartment next door to Gilbert’s apartment; Rodriquez would be in the apartment with Jackson. Brisker testified that she and Jackson had previously gone to the Russell Do-It Center building supply store and that Jackson purchased duct tape and a pair of gloves. Gilbert told Brisker that Reynolds was on his way to the apartment, and everyone then took their positions. When Reynolds pulled up to the apartment, he was forced *38 at gunpoint to enter the apartment, where Jackson was waiting with the duct tape. Harris testified that he was outside the apartment but looked through the door and saw Rodriquez holding a gun against Reynolds’s head and Jackson looking through Reynolds’s pockets. Rodriquez stated that he was about to shoot Reynolds, despite Harris and Jackson’s telling him not to shoot. Brisker, who was still in Gilbert’s apartment next door, heard fighting and struggling in the apartment and then she heard a gunshot. At that point, everyone left the apartment in Reynolds’s truck. The truck was later found abandoned and the stereo system was missing. The next day, Gilbert went to the empty apartment and discovered Reynolds’s body. Brisker then called emergency 9-1-1.
The State presented nonaccomplice testimony that included the following:
Stewart Cummings, an Alexander City Fire Department paramedic, and Lt. Fred Roth of the Alexander City Police Department testified regarding their response to an emergency call on March 18, 2009, in which they found a body in an empty apartment, its hands and feet wrapped with duct tape. Once they identified the body as Reynolds, agents and investigators collected evidence at both the crime scene and in Reynolds’s truck to search for fingerprints, DNA, footprints, and any other identifying evidence. Alabama Bureau of Investigation agent Casey Ott testified that despite the fact that the condition of the apartment indicated a struggle, no fingerprints were found at the crime scene. At least three shoe impressions were made at the crime scene from footprints left by three different length tennis shoes; however, the record does not indicate that any identification was made from any of the evidence collected.
Dr. 'Stephen Boudreau, senior state medical examiner for the Department of Forensic Sciences and the director of the Montgomery laboratory, performed the autopsy of Reynolds’s body. Dr. Bou-dreau testified that a small piece of a cloth work glove was found sticking out of Reynolds’s palm, stuck to the duct tape around his wrists.
Kanisha Mullins had known Reynolds for approximately two months when Reynolds was killed. Mullins stated that she brought Reynolds to her birthday party, where he met Gilbert, Brisker, Jackson, Harris, and Rodriquez. Shortly after March 17, 2009, Mullins was at her aunt’s home, and Harris came there. At that time, Mullins’s aunt told Harris to get out of her house because she had heard a rumor that Jackson, Rodriquez, Harris, Brisker, and Gilbert were involved in the killing of Reynolds.
Randall Lynn Causey, an employee of the Russell Do-It Center, testified that on March 17, 2009, a young black male came into the store and purchased two pairs of brown cloth work gloves, like ones used for gardening, and a roll of duct tape. However, Causey did not identify Jackson as the individual who made the purchase.
On appeal, Jackson argues that the circuit court erred in denying his motion for a judgment of acquittal. Specifically, Jackson argues that the State failed to present evidence corroborating the testimony of his alleged accomplices; therefore, he says, there was insufficient evidence to sustain his convictions. In Jackson’s reply brief, Jackson contends that Mullins’s testimony that her aunt ordered Harris out of her house because she had heard that Harris and several others, including Jackson, were involved in Reynolds’s murder was nothing more than mere speculation and conjecture and *39 thus was not sufficiently corroborative of accomplice testimony.
The State argues that the accomplice testimony was corroborated by nonac-complice evidence tending to connect Jackson to the crime. The State contends that it provided testimony from 14 witnesses who were not accomplices; however, the State admits that only 4 of the individuals gave testimony “tending” to connect Jackson to the crime. (State’s brief, at 21-23.) Particularly, the State claims that there was sufficient corroborating evidence provided in Mullins’s testimony that Mullins’s aunt ordered Harris out of her house because she had heard a rumor that Harris and several others, including Jackson, were involved in Reynolds’s murder. Because this evidence tends to show the likelihood of Jackson’s involvement, the State says, it is different than mere conjecture, surmise, or speculation, and therefore it can be corroborative of accomplice testimony. Further, the State contends that the fact that Jackson was included in the rumor evidence tends to illustrate the small likelihood of Rodriquez and Harris’s “ever going anywhere with beer drinking in mind and not taking along -with them their lifelong friend, and fellow Copeland Road crew member, Andere Jackson.” (State’s brief, at 26.)
In Alabama, the statutory definition of felony murder is as follows:
“(a) A person commits the crime of murder if he or she does any of the following:
[[Image here]]
[[Image here]]
“(3) He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person.”
§ 13A-6-2(a)(3), Ala.Code 1975. Further, in regard to a felony conviction, Alabama law states the following:
“A conviction of a felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
§ 12-21-222, Ala.Code 1975.
Accomplice testimony must be corroborated with more than a recitation of the facts of the offense. Section 12-21-222, Ala.Code 1975, states that “[a] conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
“The reason for such a rule is obvious. The accomplice knows the details of the crime because he was present and a participant and can recite those details whether or not the accused was a participant in the offense.
“... ‘This is why it is incumbent upon the State to present evidence independent of the accomplices’ which connects the defendant to the commission of the crime. Else, any guilty party is apt to implicate an innocent party in exchange for a grant of immunity from prosecu *40 tion.’ Lindhorst v. State, Ala.Cr.App., 346 So.2d 11, at 15 (1977), cert. denied, Ala., 346 So.2d 18.
“Our legislature recognized a fact which has never been recognized in federal law — that a guilty party, when offered immunity from prosecution, will point an accusing finger in any direction to avoid prosecution. The more serious the penalty, the more likely a false accusation will occur. Thus, our legislature, in order to protect the innocent and to preserve the presumption of innocence, has required additional evidence for a conviction in such cases via § 12-21-222, [Ala.Code 1975].”
Reed v. State, 407 So.2d 153, 158 (Ala. Crim.App.1980), reversed on other grounds, 407 So.2d 162 (Ala.1981). See Hergott v. State, 639 So.2d 571, 573 (Ala. Crim.App.1993) (“The purpose of § 12-21-222 was to ensure that the testimony of a guilty party testifying in return for leniency from the state would not alone be sufficient to convict another. An accomplice’s testimony must be corroborated before a conviction of felony could be had.”).
“ ‘The test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense.’” Ex parte Bullock, 770 So.2d 1062, 1067 (Ala.2000) (quoting Andrews v. State, 370 So.2d 320, 321 (Ala.Crim.App. 1979), citing in turn Miller v. State, 290 Ala. 248, 275 So.2d 675, 677 (1973)).
To corroborate has been defined by this Court as “ ‘to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony.’ ” Kuenzel v. State, 577 So.2d 474, 518 (Ala. Crim.App.1990) (citations omitted). “While corroborating evidence need not be strong, it ‘... must be of substantive character, must be inconsistent with the innocence of a defendant and must do more than raise a suspicion of guilt.’ ” Booker v. State, 477 So.2d 1388, 1390 (Ala.Crim.App. 1985) (quoting McCoy v. State, 397 So.2d 577 (Ala.Crim.App.1981)). The corroboration does not need to be sufficiently strong on its own to warrant a conviction, but it must tend to connect the defendant to the crime. Miles v. State, 476 So.2d 1228, 1234 (Ala.Crim.App.1985). As this Court has repeatedly explained, “ ‘[e]orroboration need only be slight to suffice,’ ” Stoinski v. State, 956 So.2d 1174, 1182 (Ala.Crim.App. 2006) (quoting Ingle v. State, 400 So.2d 938, 940 (Ala.Crim.App.1981)).
This Court has stated the following regarding the necessary accomplice corroboration:
“ ‘[I]t is not necessary that the accomplice should be corroborated with respect to every fact as to which he or she testifies, nor is it necessary that corroboration should establish all the elements of the offense.’ 23 C.J.S. Criminal Law § 1369 (2006) (footnotes omitted). See also Arthur v. State, 711 So.2d 1031, 1059 (Ala.Crim. App.1996) (citations omitted) (‘Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice.’); Ferguson v. State, 814 So.2d 925, 952 (Ala.Crim.App.2000) (same). ‘If the accomplice is corroborated in part, or as to some material fact or facts tending to connect the accused with the crime, or the commission thereof, this is sufficient to authorize an inference by the jury that he or she has testified truly even with respect to matters as to which *41 he or she has not been corroborated, and thus sustain a conviction.’ 23 C.J.S. Criminal Law § 1369 (2006) (footnotes omitted). See also Dykes v. State, 30 Ala.App. 129, 133, 1 So.2d 754, 756-57 (1941) (citations omitted) (explaining that ‘[i]t has been repeatedly held, and advisedly so, that the corroboration of the testimony of an accomplice need not go to every material fact to which he testifies. If corroborated in some of such facts the jury may believe that he speaks the truth as to all.’). Further, circumstantial evidence may be sufficient to corroborate the testimony of an accomplice. Arthur, 711 So.2d at 1059 (citing Jackson v. State, 451 So.2d 435, 437 (Ala.Crim.App.1984)). See also Steele v. State, 911 So.2d 21, 28 (Ala.Crim.App.2004) (explaining that accomplice testimony may be corroborated by circumstantial evidence).
‘“Whether such corroborative evidence exists is a question of law to be resolved by the trial court, its probative force and sufficiency being questions for the jury.’ Caldwell v. State, 418 So.2d 168, 170 (Ala.Crim.App. 1981) (citations omitted).”
Green v. State, 61 So.3d 386, 392 (Ala. Crim.App.2010).
Additionally, the minimum requisites of the corroborative testimony are as follows:
“a) Fact (or circumstance) of substantive character;
“b) Fact (or circumstance) tending to prove guilt;
“c) Fact (or circumstance) which is unequivocal (and certain) in character (i.e., inconsistent with the innocence of accused);
“d) Fact (or circumstance) tending legitimately to connect defendant with crime (must do more than raise a suspicion of guilt);
“e) Semble, opinion evidence alone to corroborate must concern itself with some object or fact (i.e., an opinion, standing by itself, of a trait or likelihood of human conduct would be not of substantive character).
“See also McElroy, Law of Evidence in Alabama (2d Ed.), § 300.01.”
Evans v. State, 42 Ala.App. 587, 591, 172 So.2d 796, 800 (Ala.App.1965).
“Corroborating evidence need not refer to any particular statement or fact testified to by an accomplice, but if it strengthens the probative criminating force of the accomplice’s testimony and tends to connect the defendant with the commission of the offense, it is sufficient to warrant the submission of the case to the jury.” White v. State, 48 Ala.App. Ill, 117, 262 So.2d 313, 319 (Ala.Crim.App. 1972) (citations omitted). This Court has repeatedly held that “ ‘evidence which merely raises a conjecture, surmise, speculation, or suspicion that [the] accused is the guilty person is not ... sufficiently corroborative of the testimony of an accomplice to warrant a conviction.’ 23 C.J.S. Criminal Law, Section 812(5)(b).” Steele v. State, 512 So.2d 142, 143-144 (Ala.Crim.App.1987) (quoting Staton v. State, 397 So.2d 227, 232 (Ala.Crim.App. 1981)). Furthermore, this Court has held that “non-accomplice evidence confirmatory of the way and manner in which the crime was committed but which is colorless and neutral insofar as the defendant’s connection with the crime is concerned, is not sufficient corroboration to warrant submission of the case to the jury.” Bowdoin v. State, 444 So.2d 911, 912 (Ala.Crim.App. 1984) (quoting Lindhorst v. State, 346 So.2d 11,13-14 (Ala.Crim.App.1977)).
Guided by these principles and applying the rule that requires us to subtract the *42 testimony of Jackson’s accomplices, and examine the remaining evidence in the present case, the record does not support a finding that there was sufficient evidence to corroborate the accomplice’s testimony that Jackson was involved in the commission of the felony murder. There was no evidence presented through the testimony of the four individuals that the State contends connects Jackson to the crime that indicated more than a mere speculation of Jackson’s involvement.
In Ex parte McCullough, 21 So.3d 758, 761 (Ala.2009), the Alabama Supreme Court, in applying the principles set forth above, held that a witness’s testimony that the two male perpetrators might have been black or might have been wearing ski masks did nothing more than identify the burglars as males, possibly black or possibly wearing ski masks, and did nothing more than raise a speculation of the defendant’s guilt. Id. Therefore, the McCullough Court found that the testimony was insufficient to corroborate the testimony of the defendant’s accomplices. Id. In the present case, the nonaccomplice testimony from Causey that a young black male purchased duct tape and gloves from a building-supply store, even if taken along with the fact that it was apparent to the jury that Jackson was a black male, does nothing but raise a mere speculation of Jackson’s guilt. See Ex parte McCullough, 21 So.3d at 761. Causey’s testimony does not identify Jackson as the purchaser of the duct tape and gloves. Therefore, this evidence is insufficient corroboration of the accomplice testimony and does not establish a connection between the defendant and the commission of the offense.
Additionally, testimony given by agent Casey Ott that the condition of the crime scene indicated a struggle, despite no finding of fingerprints, does not connect Jackson to the crime. Similarly, the testimony of Dr. Stephen Boudreau that a small piece of work glove was found stuck to the duct tape around Reynolds’s wrist does not connect Jackson to the crime. These particular facts tend to indicate only that gloves were used during the commission of the crime and do not connect any specific individual, including Jackson, to the crime. As such, this evidence is nonaccomplice evidence that confirms the way and manner in which the crime was committed but that is colorless and neutral insofar as Jackson’s connection with the crime is concerned. See Bowdoin v. State, 444 So.2d 911, 912 (Ala.Crim.App.1984). Thus, this evidence is not sufficient corroboration of accomplice testimony.
Furthermore, the State most heavily relied on Kanisha Mullins’s testimony — that Mullins’s aunt ordered Harris out of her house because of a rumor she had heard circulating that Harris, along with Jackson, Rodriquez, Brisker, and Gilbert were involved in Reynolds’s murder — and attempted to show that because Jackson was included in the rumor and because of their pattern and practice of hanging around together, there was a “high and very real likelihood that it would have been Andere Jackson, and no one else, who would have been in Alexander City with Rodriquez Jackson and Cornelius Harris at Shakila Brisker’s apartment on the day of the murder.” State’s brief, at 28. However, although corroborating evidence need only be slight and can be circumstantial, it still must tend to connect the accused with the commission of the crime. See McGowan v. State, 990 So.2d 931, 987 (Ala.Crim.App. 2003). It is not enough to show that Jackson was rumored to be involved in the crime or that Jackson and other accomplices often socialized together. This testimony creates only conjecture, speculation, or suspicion that Jackson is the guilty person and, thus, is not sufficiently corro *43 borative of accomplice testimony to warrant a conviction.
Therefore, the State failed to present evidence in accordance with § 12-21-222, Ala.Code 1975, that tends to connect Jackson to the crime of felony murder; thus, we conclude that the trial court erred when it denied Jackson’s motion for a judgment of acquittal.
Based on the foregoing, the judgment of the trial court is reversed and a judgment is rendered for Jackson.
REVERSED AND JUDGMENT RENDERED.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.